**TARTER KRINSKY & DROGIN LLP**
*Proposed Attorneys for NYC Constructors Inc., et al.*
*Debtors and Debtors-in-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
Arthur Goldstein, Esq.
Rocco A. Cavaliere, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
In re:                                              :
                                                    :   Chapter 11
NYC Constructors Inc., et al.[1]                    :
                                                    :   Case No. 16-10069 (SCC)
                        Debtors.                    :
-------------------------------------------------------------- x

## DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO MAKE PAYMENT OF (I) PRE-PETITION WAGES, SALARIES, PAYROLL TAXES AND REIMBURSEABLE EXPENSES, (II) ALL EMPLOYEE BENEFITS, INCLUDING UNION BENEFITS, HEALTH INSURANCE AND RELATED BENEFITS, AND (III) GRANTING RELATED RELIEF

TO: THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE

By this motion (the "Motion") NYC Constructors Inc. ("NYC Constructors") and MRP, L.L.C. ("MRP", together with NYC Constructors, the "Debtors") as debtors and debtors-in-possession (the "Debtors"), respectfully represent and state as follows:

### PRELIMINARY STATEMENT

1. NYC Constructors provides steel erection services on a number of NYC construction projects. MRP provides steel fabrication services to NYC Constructors related to its projects, and provides similar services to third parties on other projects. The Debtors have 310 employees on its payroll and utilize the services of another 16 employees (inclusive of 2

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number are NYC Constructors Inc. (7618) and MRP, L.L.C. (0498).

{Client/082551/1/01048696.DOC;3 }

independent contractors) of an affiliated entity for various daily functions (collectively, the "Employees").

2. By this Motion, the Debtors request an order in accordance with §§ 105, 363(b), 507(a)(5) and (8), and 541(d) of Title 11 of the United States Code, §§101-1532, as amended, ("Bankruptcy Code") and the "Doctrine of Necessity," authorizing the Debtors to pay, among other things, certain pre-petition wages and salaries and other compensation and benefits of various employees and amounts owed to the union (collectively, the "Employee Obligations").[2] The Debtors also request that this Court issue an order authorizing any and all applicable banks and other financial institutions to pay checks issued to pay such Employee Obligations.

3. The Debtors respectfully submit that the payment of the Employees' pre-petition wages is essential to maintain the Debtors' relationship with its Employees. Failure to pay pre-petition wages of the Employees will irreparably impair employee morale at the very time when the dedication, confidence and cooperation of these Employees are most critical. The Debtors face the risk that operations may be severely impaired if authority for the Debtors to make the payments described herein is not granted.

4. The Employees require their wages to meet their own personal obligations. Absent the relief requested herein, the Employees will suffer undue hardship and likely financial difficulties, and potentially seek other employment.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this Motion under 28 U.S.C. §§157 and 1334, and the order of reference, dated July 10, 1984 (Ward, C.J.) as amended by the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This matter is a core proceeding

---

[2] To the extent necessary, the Debtors also request authority to pay any and all processing fees, if any, associated with, and all costs incident to payment of the Employee Obligations, including any associated federal and state payroll taxes, including, among other things, social security, and Medicare taxes, as well as amounts for state and federal unemployment insurance, required to be collected or paid in connection with unpaid wages and salaries.

within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory basis for the relief requested is §§ 105, 363(b), 507(a)(4), (5), and (8) and 541(d) of the Bankruptcy Code.

## BACKGROUND

6. On January 14, 2016 (the "Filing Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and intend to continue in the operation of their businesses as debtors-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

7. NYC Constructors is a New York corporation with its principal office at 110 East 42nd Street in New York, New York. MRP, a wholly owned subsidiary of NYC Constructors, is a New Jersey limited liability company with its principal office in South Plainfield, New Jersey. NYC Constructors is a steel erector with approximately 253 employees, that provides steel erection services on large construction projects in New York City, including but not limited to the World Trade Center 3 project and the Rockefeller University Project, as more fully set forth in the First Day Declaration of Barry King. Meanwhile, MRP performs steel fabrication work for a number of companies, including NYC Constructors, and employs 57 people.

## RELIEF REQUESTED

8. The Debtors currently employ a total of approximately 310 employees (most of which are union iron workers). In particular, NYC Constructors has approximately 253 employees while MRP employs approximately 57 people. Consistent with the practice in the construction industry, these employees are paid by written check on a weekly basis, with checks for MRP's employees distributed every Wednesday, and checks for NYC Constructors' employees distributed every Thursday. Further, in order for the checks to be distributed on such dates, the Debtors must first fund its professional employer organization, Odyssey (defined

below) each Tuesday. Therefore, it is imperative that the first day hearing to consider this Motion and other first day motions takes place no later than the morning of Tuesday, January 19, 2016 (and preferably sooner, if possible).

9. In addition, the Debtors' operations are supported by about 16 individuals[3] in Toronto, who provide engineering, drafting and financial and accounting services to NYC Constructors. These Toronto employees are technically employed by a non-debtor Canadian affiliate, which is owned by B. King Construction Management Inc., which, in turn is owned by Barry King. NYC Constructors pays its non-debtor affiliate on a bi-weekly basis to cover its overhead costs and all payroll due these 16 employees that exclusively provide services to the Debtors only.

10. By this Motion, the Debtors seek authority to pay all employee related obligations of all of the foregoing Employees, whether employed by the Debtors or technically employed by DCM Building Solutions Inc. (the "Employee Obligations"). The Employee Obligations owed to the Employees that were earned within 180 days of the Filing Date are less than the statutory amounts set forth in §§507(a)(4) and (a)(5) of the Bankruptcy Code. The Employee Obligations are broken down as follows:

### (a) Unpaid Wages and Salaries and Payroll Taxes

11. As is typical for most businesses, the Debtors pay their wages and salaries in arrears. The Debtors pay their union iron workers on a weekly basis every Thursday, one week in arrears. Prior to the filing, MRP paid its employees on Wednesday, January 13, 2016 and NYC Constructors paid its employees on Thursday, January 14, 2016 for their work performed in the period from Saturday, January 2, 2016 through Friday, January 8, 2016, for which $518,549.80, including payroll taxes were due and payable. As some of the Debtors'

---

[3] One of the independent contractors is Barry King, the Debtors' President. His salary is roughly $11,000 every 2 weeks. Mr. King does not otherwise draw a salary from the Debtors.

Employees' payroll checks may not yet have been cashed for the most recent pre-petition payroll, the Debtors hereby seek authority to compel banks to honor payroll checks. In addition, MRP and NYC Constructors is required to pay its Employees on, respectively, Wednesday, January 20, 2016 and Thursday, January 21, 2016, for the work performed during this calendar week, which includes certain prepetition services. The Debtors estimate that "stub period" wages, including payroll taxes, which accrued from January 9, 2016 up to the Filing Date, and for which payment is not due until next week's payroll, aggregates $311,129.88, and thus the Debtors seek authority to satisfy all prepetition wages. No individual employee, including officers and directors, are owed more than $12,475 on account of unpaid wages.

12. Aside from the union iron workers, the 16 individuals representing the back-office staff in Toronto that exclusively provide services to the Debtors only are paid on a bi-weekly basis. These Employees were paid on January 14, 2016 for services rendered by such Employees in the two week period from December 26, 2015 through January 8, 2016, for which $74,709, including payroll taxes and overhead costs, was due and payable. Aside from these amounts, which may constitute pre-petition wages, the Debtors estimate that "stub-period" wages, including payroll taxes and overhead costs, which accrued from January 9, 2016 up to the Filing Date, and for which payment is not due until January 28, 2016, aggregates $22,413. In order to prevent any disruption to the back-office functions, the Debtors seek authority to pay all amounts owed to the non-debtor affiliate, including prepetition wages owed to these individuals in its next scheduled payroll.

13. By way of background, the Debtors utilize a payroll service provider, Odyssey Associates, f/k/a Tri-state Employment Services, Inc. ("Odyssey"), an unaffiliated entity, pursuant to a contract between the parties. Several weeks prior to the Petition Date, due to some liquidity issues spanning a few weeks, the Debtors requested that Odyssey advance funds to

cover payroll for the Debtors' Employees. In recent weeks, the Debtors have begun funding payroll obligations and paying back Odyssey for the prior advances. However, Odyssey is still owed approximately $470,000 related to advances made to cover payroll payments. By this Motion, the Debtors do not seek the authority to pay Odyssey on account of its pre-petition payroll advances at this time.[4] However, the Debtors hope to negotiate a resolution with Odyssey concerning the amounts owed during this bankruptcy case.

      (b)    **Employee Benefit Plan Obligations, Including Health Care Insurance, and Other Insurance Benefits**

14. Aside from wages and salaries, in the ordinary course of business, the Debtors provide health insurance to its non-Union Employees primarily through UnitedHealthcare/Oxford Health Insurance Inc. and dental insurance through Principal Life Insurance Company. Depending on the options selected by the employees and the terms of eligibility, the Debtors' responsibility for coverage as well as the required employee contributions for health benefits will vary. The Debtors estimate that as of the Filing Date, approximately $1,077.44 in accrued and unpaid healthcare benefit contributions was owed on behalf of the non-union Employees. These amounts qualify for priority claim status under § 507(a)(5).

15. The vast number of the Employees are iron workers that are unionized with several unions (the "Unions"). As a result, the Debtors have significant benefit obligations to the Unions, which cover, among other things, healthcare for the union Employees. The Union benefits are paid by the Debtors on a weekly basis, which on average, aggregate approximately $360,000 to $650,000 per week, depending on the number of Employees working on any given

---

[4] For the avoidance of all doubt, the Debtors do not take a position at this time as to whether Odyssey's claims can be considered priority claims under section 507. The Debtors note, however, that had payroll not been advanced by Odyssey, the Debtors' employees would have unequivocally held priority claims against the Debtors, subject to the caps imposed by section 507 of the Bankruptcy Code.

week. By this Motion, the Debtors seek the authority to pay the Unions up to $470,000 on account of unpaid prepetition Union-related benefits owed by the Debtors to the Unions.

16. Finally, the Debtors also provide their non-Union Employees with the option of retirement savings plans, which are administered through Blue Star Retirement Advisors, Inc. The total amount of unpaid pre-petition amounts owed to Blue Star for retirement contributions, including Blue Star's fee, as of the Filing Date is $2,525.

17. By this Motion, the Debtors seek the authority to make payment on account of all of the foregoing benefit and union related obligations.

### (c) Accrued Vacation and Paid Time Off

18. In the ordinary course of business, the Debtors maintain certain policies with respect to vacation time and sick leave (collectively, "Vacation"). Vacation time begins to accrue immediately upon an employee's hiring date and an employee is eligible for vacation after one year of service. In the period prior to the Filing Date, as of January 8, 2016, the Debtors' books and records reflect accrued Vacation in the amount of $157,891.52 on account of 631 vacation days owing to various Employees. This amount, however, is not a current cash payment obligation, as Employees only are entitled to receive a cash payment for accrued and unpaid Vacation time if such Employees were to leave the Debtors' employ. Otherwise, Vacation time is used by the Employees and satisfied by the Debtors in the ordinary course of business.

### (d) Reimbursement of Expenses

19. In the ordinary course of the Debtors' business, the Debtors reimburse their Employees for reasonable and customary expenses incurred in the scope of their employment and on behalf of the Debtors. These expense reimbursements include, among other things, travel expenses, equipment and other goods purchased by such Employees for the benefit of the

Debtors' businesses. While expenses reimbursements fluctuate from time to time, in a typical month, the Debtors, on average, makes expense reimbursements of approximately $5,000 per month. In addition, one of the Debtors' employees is reimbursed 50% of his tuition and books related to an engineering degree, estimated to cost about $5,000 annually. Currently, the Debtors believe they only owe approximately $4,300 on account of expense reimbursements. Out of an abundance of caution, because Employees will sometimes delay the submission of requests for expense reimbursements, the Debtors seek the authority to make expense reimbursements in the total amount of $5,000, which the Debtors believe will more than adequately cover any unpaid expenses.

## BASIS FOR RELIEF REQUESTED

20. The Debtors seek the approval of this Court and its authority to pay the Employee Obligations to its Employees. It is well settled that a bankruptcy court may authorize the payment of pre-petition obligations where necessary. Payment of pre-petition obligations is rooted in the common-law "necessity of payment" doctrine, which courts have consistently applied where failure to pay pre-petition obligations posed a real and significant threat to a debtor's reorganization. See, e.g., In re Lehigh Valley Railroad Co., 558 F.2d 137 (3d Cir. 1977); In re Penn Central Transp. Co., 467 F.2d 100 (3d Cir. 1972).

21. In a line of well established cases, the doctrine was first applied beginning with railroad reorganizations dating back to the turn of the century. See, e.g., Gregg v. Metropolitan Trust Co., 197 U.S. 183 (1905) ("the payment of the employees of the [rail]road is more certain to be necessary in order to keep it running than payment of any other class of previously incurred debt"); Miltenberger v. Logansport Railway, 106 U.S. 286 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of . . . [crucial] business relations").

22. In Ionosphere Clubs, 98 B.R. 174 (Bankr. S.D.N.Y. 1989), this Court recognized

that an order authorizing a debtor to pay certain pre-petition wages, salary, medical benefit and business expense claims can be justified by the necessity of payment doctrine, because such payments are necessary to preserve and protect the debtor's business. 98 B.R. at 175-76. Similarly, in In re Gulf Air, Inc., 112 B.R. 152 (Bankr. W.D. La 1989), the court found that payment of pre-petition employee wage claims was essential to the debtor's reorganization efforts because, without payment, many skilled employees would abandon the debtor's operations. See, also, In re Marine Optical, Inc., 10 B.R. 893 (B.A.P.D. Mass, 1981) (court authorized post-petition payments of pre-petition employee claims including wages and other benefits which would be entitled to priority under 11 U.S.C. §507(a)(3) (as amended, currently 11 U.S.C. §507(a)(4))); Matter of Northern Pipeline Construction Co., 2 C.B.C. 2d, 475, 477 (Bankr. D. Minn. 1980) (debtor obtained authority to pay, on a post-petition basis, pre-petition employee related claims as such payments were in the best interest of the estate and would not significantly affect unsecured creditors); In re Chateaugay Corp., 80 B.R. 279 (Bankr. S.D.N.Y. 1987) (authorizing debtor to make "selective" pre-petition payments and finding that such payment were not in violation of §507 of the Code.

23. As discussed, the "necessity of payment" doctrine is completely applicable in the instant situation. Without assurances that pre-petition obligations will be satisfied, the Debtors risk losing the Employees and maintaining goodwill. The Debtors' maintenance of its work force and its goodwill is essential to their operations, and ultimately to preserving and enhancing the value of its estate for the Debtors and their creditors. The Debtors' situation provides compelling justification for the relief requested.

24. The modern day analogue to the "necessity of payment" doctrine appears in §105(a) of the Bankruptcy Code, which provides, in pertinent part:

> "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

U.S.C. §105(a). Since payment of the pre-petition obligations set forth in the Motion is crucial to Debtor's preservation of its assets, this Court has the authority to order such payment by virtue of §105(a) of the Bankruptcy Code. Bankruptcy courts in this District routinely grant authority to debtors-in-possession to pay Employee Obligations, as long as they are within the "cap" established under § 507 of the Bankruptcy Code. The Debtors believe that each of the Employees that are owed prepetition wages fall within the "cap" under § 507 of the Bankruptcy Code.

25. Moreover, the relief requested in this Motion satisfies Bankruptcy Rule 6003 which provides that to the extent "relief is necessary to avoid immediate and irreparable harm", a bankruptcy court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to 21 days after the Filing Date. As indicated herein, failure to pay the Employee Obligations would likely result in the departure of many critical Employees, thereby adversely affecting the Debtor's business operations. As noted, the Employees are unionized. The failure to pay even one Employee will not go unnoticed and would likely result in significant repercussions from the Unions.

26. Finally, the Debtors seek a waiver of the notice requirements of Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).

## NOTICE

27. The Debtors have served this Motion upon (a) the U.S. Trustee, (b) Odyssey (c) Banker Steel, the Debtors' prepetition secured lender, and (d) the Internal Revenue Service, and (e) each of the Debtors' top 20 creditors. The Debtors submit that in light of the facts and circumstances of the case and the nature of the relief requested herein, such notice is sufficient and no other or further notice is required.

WHEREFORE, the Debtor requests entry of an order, annexed hereto as **Exhibit "A"**, authorizing payment of the Employee Obligations to its Employees and granting the Debtor such and further relief as the Court seems just and proper.

Dated: New York, New York
       January 14, 2016

                                      **TARTER KRINSKY & DROGIN LLP**
                                      *Proposed Attorneys for Debtors*
                                      *and Debtors-in -Possession*

                                  By:     /s/Scott S. Markowitz
                                                  Scott S. Markowitz
                                                  Arthur Goldstein
                                                  Rocco A. Cavaliere
                                                  1350 Broadway, 11th Floor
                                                  New York, New York 10018
                                                  (212) 216-8000
                                                  smarkowitz@tarterkrinsky.com
                                                  agoldstein@tarterkrinsky.com
                                                  rcavaliere@tarterkrinsky.com

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re: :
: Chapter 11
NYC Constructors Inc., et al., :
: Case No. 16-10069 (SCC)
Debtors. :
------------------------------------------------------------x

## INTERIM ORDER AUTHORIZING THE DEBTORS TO MAKE PAYMENT OF (I) PRE-PETITION WAGES, SALARIES, PAYROLL TAXES AND REIMBURSABLE EXPENSES; (II) ALL EMPLOYEE BENEFITS, INCLUDING UNION BENEFITS, WORKERS COMPENSATION, HEALTH INSURANCE AND RELATED BENEFITS; AND (III) GRANTING RELATED RELIEF

Upon consideration of the Debtor's Motion for entry of an order authorizing the Debtor to make payment of Employee Obligations;[1] and it appearing to the Court that the Debtors have provided proper and adequate notice of the Motion, and upon the record established at the hearing held on January ___, 2016, and it further appearing that the request for relief is reasonable and proper and sufficient cause appearing therefor; it is hereby

**ORDERED** that the Motion is granted to the extent set forth below; and it is further

**ORDERED** that the Debtors are authorized, but not directed, to honor and pay the Employee Obligations as set forth in the Motion to the Employees, in accordance with the Debtors' stated policies and pre-petition practices, and in the ordinary course of the Debtors' business, including, but not limited to, amounts that have been earned, accrued, or vested prior to the Filing Date, *provided that* no amounts paid to any Employee under this Order shall exceed the limits set forth in 11 U.S.C. §507(a)(4) and (5) of the Code and further provided that such obligations arose within 180 days of the Filing Date; and it is further

**ORDERED** that the Debtors are authorized, but not directed, in their sole discretion, to

---

[1] Capitalized terms otherwise undefined herein shall have the meanings set forth in the Motion.

{Client/082551/1/01051484.DOC;1 }

issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed to their Employees. To the extent that any prepetition checks are dishonored, such amounts shall not count against the $12,425 per individual cap provided in section 507(a)(4)-(5) of the Bankruptcy Code; and it is further

**ORDERED** the Debtors shall not accelerate any amounts that ordinarily would have come due after the Filing Date and through the Final Hearing and seek to pay those amounts prior to the Filing Date; and it is further

**ORDERED** that the Debtors are authorized to file tax returns with, and pay any and all processing fees associated with, and all costs incident to payment of the Employee Obligations, including any associated taxes required to be collected or paid to any appropriate taxing authorities; and it is further

**ORDERED** that any banks or other financial institutions (the "Banks") on which checks were drawn or electronic payment requests made in payment of the Employee Obligations approved herein are authorized and directed to receive, process, honor and pay all such checks and electronic payment requests when presented for payment, and all such Banks are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order, *provided, however,* that sufficient funds are available in the Debtors' bank accounts to cover such payments; and it is further

**ORDERED** that notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order and the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this

Order; and it is further

**ORDERED** that notwithstanding anything to the contrary contained herein, any payment made, or authorization contained, hereunder shall be subject to the requirements and restrictions imposed on the Debtors under any order authorizing the use of cash collateral or authorizing the Debtors to enter into a debtor in possession financing facility and the documents associated with such facility, and shall be subject to all claims, liens, security interests and priorities granted in connection with such facility; and it is further

**ORDERED** that a hearing to consider the entry of the Final Order granting the relief requested in the Motion shall be held on **February __, 2016 at _____ a.m.**(EST) (the "Final Hearing"). Any objections or responses to entry of the proposed Final Order granting the requested relief shall be filed *by January __, 2016,* with the Clerk of the United States Bankruptcy Court for the Southern District of New York and be served upon (i) the Debtors; (ii) proposed counsel for the Debtors; (iii) The Office of the United States Trustee for Region 2; (iv) counsel to Banker Steel Co., Inc., and (v) counsel to any statutory committee appointed in this chapter 11 case. If no objections are timely received, the Court may enter the proposed Final Order without a final hearing; and it is further

**ORDERED** that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

No Objection to Entry of this Order:

Office of the United States Trustee
Southern District of New York


By:_____
     Trial Attorney


Dated: New York, New York
        January __, 2016

                                    _____
                                    HONORABLE SHELLEY C. CHAPMAN
                                    UNITED STATES BANKRUPTCY JUDGE