**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NYC Constructors Inc., *et al.*,[1] | ) | Case No. 16-10069 (SCC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**INTERIM ORDER PURSUANT TO 11 U.S.C. SECTIONS
105, 361, 362, 363 AND 364 AND RULES 2002, 4001 AND 9014
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) AUTHORIZING
INCURRENCE BY THE DEBTORS OF POSTPETITION SECURED INDEBTEDNESS
WITH PRIORITY OVER ALL SECURED INDEBTEDNESS AND WITH
ADMINISTRATIVE SUPERPRIORITY, (II) GRANTING LIENS, (III) AUTHORIZING
USE OF CASH COLLATERAL BY THE DEBTORS AND PROVIDING FOR
ADEQUATE PROTECTION, (IV) MODIFYING THE AUTOMATIC STAY
AND (V) SCHEDULING A FINAL HEARING**

Upon the motion, dated January 14, 2016 [*ECF No. 10*] (the "Motion") by the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking, among other things, entry of an interim order (this "Interim Order"):

(i)      authorizing the Debtors, under the DIP Facility (as defined below), to obtain credit and incur debt, pursuant to sections 363, 364(c) and 364(d) of title 11 of the United States Code (the "Bankruptcy Code"), on an interim basis for a period (the "Interim Period") from the commencement of the case through and including the date of the Final Hearing (as defined below), up to the aggregate amount of $2,000,000, secured by first priority, valid, priming, perfected, and enforceable liens (as defined in section 101(37) of the Bankruptcy Code) on property of the Debtors' estates pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number are NYC Constructors Inc. (7618) and MRP, L.L.C. (0498).

Bankruptcy Code, and with priority, as to administrative expenses, as provided in section 364(c)(1) of the Bankruptcy Code, all subject to the terms and conditions contained herein;

   (ii) (a) authorizing the Debtors to obtain such postpetition financing of up to $3,000,000 (the "DIP Facility") pursuant to (I) that certain Debtor In Possession Loan and Security Agreement (the "DIP Credit Agreement"),[2] substantially in the form attached to the Motion as Exhibit B, by and among NYC Constructors Inc. and MRP, L.L.C. (collectively, the "Borrowers") and Banker Steel Co., L.L.C. (the "DIP Lender"), and (II) all other agreements, documents, and instruments to be executed and/or delivered with, to, or in favor of DIP Lender (all documents comprising the DIP Facility, each as may be amended, modified or supplemented and in effect from time to time, collectively, the "DIP Financing Documents"); (b) authorizing the Debtors to incur the "DIP Loan Obligations" under and as defined in the DIP Credit Agreement; and (c) authorizing the Debtors to execute and deliver the DIP Financing Documents and to perform such other acts as may be necessary or desirable in connection therewith;

   (iii) authorizing the use of the proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Documents) in each case in a manner consistent with and subject to the terms and conditions of the DIP Financing Documents and this Interim Order, and in strict compliance with the Approved Budget (as defined below) solely for the purposes set forth in the DIP Financing Documents including to (a) pay interest, costs, fees and other transaction expenses owing to DIP Lender (including DIP Lender's professional fees and expenses); (b) fund other working capital and other general corporate purposes; and (c) fund certain allowed administrative costs and expenses of the Chapter 11 Cases;

(iv)    granting to DIP Lender automatically perfected liens on and security interests in all of the DIP Collateral (as defined below), including, without limitation, all property constituting "cash collateral" (as defined in section 363(a) of the Bankruptcy Code, and hereinafter, "<u>Cash Collateral</u>"), which liens and security interests shall have the priorities set forth in paragraph 2(h) below;

(v)    granting to DIP Lender allowed superpriority administrative claims in each of the Chapter 11 Cases and any Successor Case (as defined below) in respect of all DIP Loan Obligations, pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have the priorities set forth in paragraph 2(i) below;

(vi)    authorizing the Debtors' use of Cash Collateral on the terms and conditions set forth in this Interim Order, and providing adequate protection on the terms set forth in this Interim Order, to the Prepetition Secured Lender (as defined below) for any Diminution in Value (as defined below) for its interests in the Prepetition Collateral (as defined below), including the Cash Collateral;

(vii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Documents and this Interim Order;

(viii)    scheduling a final hearing (the "<u>Final Hearing</u>") to consider entry of an order (the "<u>Final Order</u>") granting the relief requested in the Motion on a final basis, and to approve the form and manner of notice with respect to the Final Hearing; and

---

[2]    Capitalized terms used but not otherwise defined in this Interim Order shall have the meanings ascribed to such terms in the DIP Credit Agreement.

(ix)    waiving any applicable stay as provided in the provisions of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and providing for the immediate effectiveness of this Interim Order;

The Court having considered the Motion, the Declaration of Barry King, in support of the Debtors' first day motions and orders, the exhibits attached thereto, the DIP Credit Agreement, the arguments of counsel and the evidence submitted by the Debtors at the interim hearing held before the Court on January 19, 2016 (the "<u>Interim Hearing</u>"); and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "<u>Local Rules</u>"), due and proper notice of the Motion and the Interim Hearing having been given; and the Interim Hearing having been held and concluded; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and is essential for the continued operation of the Debtors' business and to preserve and maximize the value of the Debtors' estates for the benefit of all stakeholders; and it further appearing that the Debtors are unable to secure unsecured credit for money borrowed allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND:**

A.    **<u>Petition Date</u>**.    On January 14, 2016 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York.  The Debtors are continuing in the management

and operation of their businesses and property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  Pursuant to an order of this Court, the Chapter 11 Cases have been consolidated for procedural purposes only.  No trustee or examiner has been appointed in the Chapter 11 Cases.

B.    **Jurisdiction and Venue**.  This Court has jurisdiction over these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Chapter 11 Cases and proceedings on the Motion are proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    **Statutory Committee**.  As of the date of this Interim Order, a statutory committee of unsecured creditors (the "Committee") had not been appointed in the Chapter 11 Cases.

D.    **Notice**.  The Interim Hearing was held pursuant to Bankruptcy Rules 2002 and 4001 and Local Rule 4001-2.  Notice of the Interim Hearing and the emergency relief requested in the Motion was given by the Debtors, whether by telecopy, email, overnight courier or hand delivery on January 15, 2016, to certain parties in interest, including: (i) the Office of the United States Trustee for the Southern District of New York (the "United States Trustee"), (ii) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis, (iii) counsel to DIP Lender, (iv) counsel to Banker Steel Co., L.L.C.; (v) all known parties asserting a lien against the DIP Collateral; (vi) the Internal Revenue Service; (vii) the Securities and Exchange Commission; (viii) the United States Department of Justice; (ix) the New York State Department of Taxation, and (ix) all parties requesting notice pursuant to Bankruptcy Rule 2002.    Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion is due

and sufficient notice and complies with sections 102(1), 363, 364(c) and 364(d) of the

Bankruptcy Code, Bankruptcy Rules 2002, 4001(b), 4001(c), 4001(d) and the Local Rules, and

no other or further notice of the relief granted pursuant to this Interim Order is necessary or

required.

      E.    **The Debtors' Acknowledgements and Agreements**.  Without prejudice to the

rights of parties in interest as set forth in paragraph 7 below, the Debtors admit, stipulate,

acknowledge and agree that (collectively, paragraphs E(i) through E(v) hereof shall be referred

to herein as the "Debtors' Prepetition Secured Lien Stipulations"):

      (i)    **Prepetition Note**.  Prior to the Petition Date, the Debtors were parties to that certain Promissory Note and Security Agreement (the "Prepetition Note"), among the Debtors, as borrowers, and Banker Steel Co., L.L.C., as lender (in such capacity, the "Prepetition Secured Lender").  Pursuant to the Prepetition Note, the Prepetition Secured Lender made available to the Debtors a secured term loan in the aggregate principal amount of $2,000,000.

      (ii)    **Prepetition Secured Obligations**.  As of the Petition Date, the outstanding principal amount under the Prepetition Note was $2,000,000 (such amount, together with any amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Note, accrued and unpaid interest, any fees, expenses and disbursements, indemnification obligations and other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof, collectively, the "Prepetition Secured Obligations").

      (iii)    **Liens Securing Prepetition Secured Obligations.**  Pursuant to the Prepetition Note, to secure the Prepetition Secured Obligations, the Debtors granted to the Prepetition Secured Lender liens on and security interests in all personal property and fixtures, whether now owned by or owing to, or hereafter acquired by or arising in favor of the Debtors, and whether owned or consigned by or to, or leased from or to, the Debtors, and regardless of where located, including all (with each of the following terms having the meanings ascribed thereto in the Prepetition Note) Accounts; Chattel Paper; copyrights, patents and trademarks; Documents; Equipment; Fixtures; General Intangibles; Goods; Instruments; Inventory; Investment Property; cash or cash equivalents; Deposit Accounts with any bank or financial institution; Commercial Tort Claims; any other contract rights or rights to the payment of money; and all accessions to, substitutions for and replacements, proceeds, insurance proceeds and

products of the foregoing, together with all books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records related thereto and any General Intangibles at any time evidencing or relating to any of the foregoing (the "Prepetition Collateral").  The liens and security interests granted to the Prepetition Secured Lender pursuant to the Prepetition Note are referred to as the "Prepetition Secured Liens".

(iv) **Validity, Perfection and Priority of Prepetition Secured Liens and Prepetition Secured Obligations.**  As of the Petition Date, (i) the Prepetition Secured Liens are valid, binding, enforceable, non-avoidable and properly perfected; (ii) the Prepetition Secured Liens (x) are senior in priority to any and all other liens on the Prepetition Collateral, subject only to certain liens, if any, otherwise permitted pursuant to the Prepetition Note,[3] and (y) are not subject to avoidance, recharacterization, subordination or other challenge pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (iii) the Prepetition Secured Obligations constitute legal, valid, binding and non-voidable obligations of the Debtors, enforceable in accordance with the terms of the Prepetition Note (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and are not subject to any objection, offset, defense or counterclaim of any kind, and no portion of the Prepetition Secured Obligations is subject to avoidance, disallowance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iv) the Prepetition Secured Obligations constitute allowed secured claims pursuant to section 506 of the Bankruptcy Code.  On the date that this Interim Order is entered, the Debtors have waived, discharged and released the Prepetition Secured Lender, together with its affiliates, agents, attorneys, officers, directors and employees, of any right the Debtors may have (x) to challenge or object to any of the Prepetition Secured Obligations or any security therefor, and (y) to bring or pursue any and all claims, objections, challenges, causes of action and/or chooses in action arising out of, based upon or related to the Prepetition Note or otherwise.  The Debtors do not possess and will not assert any claim, counterclaim, setoff, objection, challenge, cause of action or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Prepetition Secured Liens, or any claim of the Prepetition Secured Lender pursuant to the Prepetition Note.

---

[3] Nothing herein shall constitute a finding or ruling by this Court that any such permitted liens, if any, are valid, enforceable, perfected, non-avoidable or senior to the Prepetition Secured Liens.  Nothing herein shall prejudice the rights of any party in interest including, but not limited to, the Debtors, the Prepetition Secured Lender, the DIP Lender and any Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection, extent or any other aspect of any such permitted liens.

    (v)  **Interest in Cash Collateral**. The Prepetition Secured Lender has a security interest in Cash Collateral of the Debtors, including all amounts on deposit in the Debtors' banking, checking, or other deposit accounts and all proceeds of Prepetition Collateral to secure its prepetition claims.

  F.  **Findings Regarding the Post-Petition Financing**.

    (i)  **Need for Post-Petition Financing**. An immediate need exists for the Debtors to obtain funds under the DIP Facility in order to continue remaining operations and to administer and preserve the value of the Debtors' estates. The ability of the Debtors to meet payroll and finance their remaining operations, and to preserve, maintain and maximize the value of their assets for the benefit of their creditors, requires the immediate availability of working capital provided pursuant to the DIP Facility. Without immediate access to the DIP Facility, the Debtors have insufficient funds available to sustain operations of any magnitude for any length of time. The inability to obtain funding under the DIP Facility would immediately and irreparably harm the Debtors, their estates and their creditors, and irreparably damage the Debtors' prospects for a successful reorganization or sale of their assets as a going concern or otherwise.

    (ii)  **No Credit Available on More Favorable Terms**. The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. Given their current financial condition, financing arrangements and capital structure, the Debtors are unable to obtain secured credit pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code on more favorable terms and conditions than those provided in the DIP Financing Documents and this Interim Order. Financing on a postpetition basis is not otherwise available without granting to DIP Lender (a) valid and perfected security interests in and liens on all of the Debtors' existing and after acquired assets with the priorities set forth in this Interim Order, (b) superpriority claims with the priorities set forth in this Interim

Order, and (c) the other protections, rights and remedies set forth in the DIP Financing Documents and this Interim Order.

        G.    **Use of Proceeds of the DIP Facility**.  Proceeds of the DIP Facility shall be used in a manner consistent with and subject to the terms and conditions of the DIP Credit Agreement, and in strict compliance with the Approved Budget and the limitations set forth in this Interim Order, solely (i) to pay interest, costs, fees and other transaction expenses owing to DIP Lender (including DIP Lender's professional fees and expenses); (ii) to fund other working capital and other general corporate purposes; and (ii) to fund certain allowed administrative costs and expenses of the Chapter 11 Cases.

        H.    **Application of Proceeds of DIP Collateral**.   All proceeds of a sale or other disposition of the DIP Collateral shall be applied to outstanding DIP Loan Obligations as determined by DIP Lender pursuant to the DIP Financing Documents.

        I.    **Property of the Estate**.  Each item of the DIP Collateral constitutes property of the Debtors' estates.

        J.    **Adequate Protection for Prepetition Secured Lender**.  The priming of the Prepetition Secured Liens on the Prepetition Collateral pursuant to section 364(d) of the Bankruptcy Code, as further described below, will enable the Debtors to obtain the DIP Facility, to continue remaining operations, and to maximize the value of their assets for the benefit of their estates and creditors.  The Prepetition Secured Lender had consented to such priming liens and is being provided adequate protection as set forth in this Interim Order, pursuant to sections 361, 363 and 364 of the Bankruptcy Code, for any diminution in the value of its interests in the Prepetition Collateral (including Cash Collateral) resulting from the subordination to the Carve-Out (as defined herein) and the DIP Liens (as defined below), the Debtors' use, sale, or lease of

such Prepetition Collateral, and the imposition of the automatic stay (collectively, and solely to the extent of any such diminution in value the "Diminution in Value").  Pursuant to Sections 361, 363, 364 and 507(b) of the Bankruptcy Code, as adequate protection to the extent of any Diminution in Value of its interests in the Prepetition Collateral (including Cash Collateral), the Prepetition Secured Lender will receive the rights and protections set forth in this Interim Order, including pursuant to paragraph 4 of this Interim Order.

K.     **Section 506(c) and Section 552(b)**.  In light of the subordination of their liens and superpriority claims to (i) the Carve-Out (as defined below) in the case of the DIP Lender and (ii) the Carve-Out and the DIP Liens in the case of the Prepetition Secured Lender, the DIP Lender and the Secured Lender are each entitled to (a) all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

L.     **Extension of Financing**.  DIP Lender has indicated a willingness to provide financing to the Debtors in accordance with the DIP Credit Agreement and subject to (i) the entry of this Interim Order and a Final Order, and (ii) findings by the Court that such financing is essential to the Debtors' estates, that DIP Lender is a good faith financier, and that the superpriority claims, security interests and liens, and other protections granted to DIP Lender pursuant to this Interim Order and the DIP Facility will not be affected by any subsequent reversal or modification of this Interim Order or the Final Order unless the Interim Order and/or the Final Order were stayed pending appeal, as provided in section 364(e) of the Bankruptcy Code.

M.     **Business Judgment and Good Faith Pursuant to Section 364(e)**.  (i) The terms and conditions of the DIP Facility and the DIP Credit Agreement, and the fees paid and to be

paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration; (ii) the DIP Facility was negotiated in good faith and at arms' length between the Debtors and DIP Lender, (iii) use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which DIP Lender is entitled to the protection and benefits of section 364(e) of the Bankruptcy Code; and (iv) DIP Lender is hereby found to be acting in good faith within the meaning of section 364(e) of the Bankruptcy Code in closing the DIP Facility contemplated herein and in the DIP Credit Agreement after the entry of this Interim Order.

N.      **Relief Essential; Best Interest; Good Cause**.  The relief requested in the Motion is necessary, essential, and appropriate for continued operations, and for the management, maintenance and preservation of the Debtors' assets and property as it will, among other things, provide the Debtors with the necessary liquidity to (i) minimize disruption to their on-going operations while the Debtors pursue a going concern sale of their assets; (ii) preserve and maximize the value of their estates for the benefit of all creditors; and (iii) avoid immediate irreparable harm to the Debtors, their creditors, their businesses, their employees, and their estates.  It is in the best interest of the Debtors' estates for the Debtors to be allowed to establish the DIP Facility contemplated by the DIP Credit Agreement and to grant the other relief set forth herein.  Good cause has been shown for the relief requested in the Motion and as granted in this Interim Order.

O.      **Final Hearing**.  At the Final Hearing, the Debtors will seek final approval of the proposed DIP Facility and use of Cash Collateral pursuant to a proposed Final Order, which shall

be in form and substance acceptable to DIP Lender.  Notice of the Final Hearing and Final Order

will be provided in accordance with this Interim Order.

P.    **Entry of Interim Order**.    For the reasons stated above, the Debtors have

requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing findings and conclusions, and the record before the Court with

respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1.    **Motion Granted**.    The Motion is hereby granted, on an interim basis, in

accordance with the terms and conditions set forth in this Interim Order and the DIP Financing

Documents.

2.    **DIP Facility Authorization**.

(a)    **Approval of Entry Into DIP Financing Documents**.    The Debtors are

expressly and immediately authorized, empowered and directed to execute and deliver the DIP

Financing Documents and to incur and to perform the DIP Loan Obligations in accordance

with, and subject to, the terms of this Interim Order and the DIP Financing Documents, and to

execute and deliver all instruments and documents which may be required or necessary for the

performance by the Debtors under the DIP Facility and the creation and perfection of the DIP

Liens described in and provided for by this Interim Order and the DIP Financing Documents.

The Debtors are hereby authorized and directed to do and perform all acts, pay the principal,

interest, fees, expenses, and other amounts described in the DIP Financing Documents as such

become due, including, as applicable, all closing fees, collateral fees, unused line fees, and

other fees and disbursements (including, without limitation, reasonable attorneys' fees and

disbursements) as provided for in the DIP Financing Documents, which amounts (a) shall not

be subject to or require further approval of this Court, and (b) shall not be subject to

compliance with the guidelines promulgated by the United States Trustee, and no recipient of such payments shall be required to file any interim or final fee application with respect thereto. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Interim Order and DIP Financing Documents. Upon execution and delivery, the DIP Financing Documents shall represent valid and binding obligations of the Debtors enforceable against the Debtors in accordance with their terms.

(b)    **Authorization to Borrow**.  In order to enable the Debtors to continue to operate their businesses, during the Interim Period, and subject to the terms and conditions set forth in the DIP Credit Agreement, the other DIP Financing Documents, the Approved Budget and this Interim Order, the Debtors are hereby authorized to borrow on an interim basis up to $2,000,000 under the DIP Facility.

(c)    **Budget**.   All borrowing under the DIP Facility shall be in strict compliance with the Approved Budget (as such term is defined in the DIP Credit Agreement), a summary schedule of which is annexed hereto as **Exhibit A** (as the same may be modified from time to time consistent with and subject to the terms of the DIP Credit Agreement, and with the consent of DIP Lender), and the Debtors shall not use any portion of the proceeds of the DIP Facility, directly or indirectly, in excess of the amounts set forth in the Approved Budget, except (and strictly to the extent of) any variance permitted under the DIP Credit Agreement.  The Approved Budget may be updated and amended (with the consent and/or at the request of DIP Lender) from time to time, provided that such updated or amended Approved Budget shall be in form and substance acceptable to DIP Lender, and the Debtors shall be required always to comply strictly with the Approved Budget and the DIP Credit

Agreement.  The Debtors shall provide a copy of any amended and/or updated Approved Budget that has been consented to by, and is in form and substance acceptable to, DIP Lender to the United States Trustee and the Committee.  Notwithstanding any "first day" or subsequent orders entered by the Court authorizing the Debtors to pay any prepetition or other claims and expenses, all such payments shall be made only to the extent they are in strict compliance with the Approved Budget.

(d)    **Application of DIP Proceeds and Collections**.  The proceeds of the DIP Facility (net of any amounts used to pay DIP Lender fees, costs, and expenses under the DIP Credit Agreement) shall be used, in each case in a manner consistent with and subject to the terms and conditions of the DIP Financing Documents, and in strict compliance with the Approved Budget and the limitations set forth in this Interim Order, solely (i) to pay interest, costs, fees and other transaction expenses owing to DIP Lender (including DIP Lender's professional fees and expenses); (ii) to fund other working capital and other general corporate purposes; and (iii) to fund certain allowed administrative costs and expenses of the Chapter 11 Cases; *provided*, that, notwithstanding the foregoing, no proceeds of the DIP Facility shall be used to pay any costs or expenses of the Tower Three Project (as such term is defined in the DIP Credit Agreement) or any costs or expenses directly or indirectly related thereto.  Any and all collections and payments received by DIP Lender, and all other proceeds of the DIP Collateral, shall be applied to the outstanding DIP Loan Obligations as determined by DIP Lender pursuant to the DIP Financing Documents.

(e)    **Conditions Precedent**.  DIP Lender shall have no obligation to make any loan or advance under the DIP Credit Agreement during the Interim Period unless the

conditions precedent to the making of such loan under the DIP Credit Agreement have been satisfied in full or waived by DIP Lender in its sole discretion.

(f)    **DIP Liens and DIP Collateral**.    Effective immediately upon the execution of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code, DIP Lender is hereby granted continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected postpetition liens on and security interests in (collectively, the "DIP Liens") any and all presently owned and hereafter acquired property and assets of the Debtors, whether real or personal, tangible or intangible, and wherever located, and all proceeds, products, offspring, rents, proceeds of interests in leaseholds and profits thereof, and including, without limitation, the following (all collateral described in this paragraph 2(f) collectively, the "DIP Collateral"):[4] (i) all Collateral (as defined in the DIP Credit Agreement), and (ii) all claims and causes of action of the Debtors and their estates, and all proceeds thereof, including without limitation, all avoidance actions under Chapter 5 of the Bankruptcy Code (the "Avoidance Actions"); provided, however, that Avoidance Actions and the proceeds thereof shall not be considered DIP Collateral until the entry of the Final Order.

(g)    **Account Control Agreements**.    The Debtors are authorized and directed to deliver to DIP Lender deposit account control agreements, as and to the extent required by DIP Lender, duly executed by such parties as are reasonably required by DIP Lender, and in each case, in form and substance acceptable to DIP Lender.

---

[4] All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Financing Documents.  All terms not specifically defined in the DIP Financing Documents shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code.

(h) **DIP Lien Priority**.  The DIP Liens created and granted to DIP Lender, as provided herein, (i) are created pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, (ii) are first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral, subject only to the Carve-Out.  The DIP Liens shall secure all DIP Loan Obligations.  Other than as expressly set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest by any order heretofore or hereafter entered in the Chapter 11 Cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "Successor Cases"), and/or upon the dismissal of the Chapter 11 Cases or any Successor Cases.  The DIP Liens shall not be subject to sections 506(c) (subject to entry of the Final Order), 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the DIP Liens.

(i) **DIP Superpriority Administrative Claim**.  Subject only to the Carve-Out, all DIP Loan Obligations shall be an allowed superpriority administrative expense claim (the "DIP Superpriority Claim" and, together with the DIP Liens, the "DIP Protections") with priority in the Chapter 11 Cases and any Successor Cases, under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise, over all administrative expense claims of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113, 1114, or any other provision of the Bankruptcy Code, and, if approved in the Final Order, section 506(c) of the Bankruptcy Code,

whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.  Other than the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these Chapter 11 Cases, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the DIP Superpriority Claim.  The DIP Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including without limitation, and after entry of a Final Order, Avoidance Actions and all proceeds of Avoidance Actions.

(j)    **Enforceable Obligations**.  The DIP Financing Documents shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable in accordance with their terms against the Debtors, their creditors, their estates and any successors thereto (including without limitation, any trustee appointed in the Chapter 11 Cases or in any Successor Cases).

(k)    **Protection of DIP Lender and Other Rights**.  From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Credit Agreement and this Interim Order and in strict compliance with the Approved Budget (subject to any variances thereto permitted by the DIP Credit Agreement).

3.    **Authorization to Use Cash Collateral**.  During the Interim Period and subject to the terms and conditions of this Interim Order and the DIP Financing Documents, and in strict compliance with the Budget, the Debtors are authorized to use Cash Collateral until the earliest to occur of (i) the repayment in full of the DIP Obligations and the permanent reduction of the

commitment under the DIP Facility to zero, and (ii) the date such right to use Cash Collateral

otherwise terminates as provided in this Interim Order (unless otherwise consented to in writing

by the DIP Lender and the Prepetition Secured Lender in their sole discretion).  Nothing in this

Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside

the ordinary course of business, or the Debtors' use of Cash Collateral or other proceeds

resulting therefrom, except as expressly permitted in this Interim Order, the DIP Financing

Documents, and in strict compliance with the Budget

     4.    **Adequate Protection**.

     (a)    **Adequate Protection Liens**.  Pursuant to sections 361, 363(e) and 364(d)

of the Bankruptcy Code, as adequate protection for the interests of the Prepetition Secured

Lender in the Prepetition Collateral against any Diminution in Value of such interests in the

Prepetition Collateral, the Debtors hereby grant to the Prepetition Secured Lender continuing,

valid, binding, enforceable, and automatically perfected postpetition security interests in and

liens on the DIP Collateral (the "Adequate Protection Liens").

     (b)    **Priority of Adequate Protection Liens**.  In accordance with the terms of

this Interim Order, the Adequate Protection Liens shall be junior only to:  (A) the Carve-Out, and

(B) the DIP Liens.  The Adequate Protection Liens shall otherwise be senior to all other security

interests in, liens on, or claims against any of the DIP Collateral.

     (c)    **Adequate Protection Superpriority Claims**.  As further adequate

protection against any Diminution in Value of the Prepetition Secured Lender in the Prepetition

Collateral, the Prepetition Secured Lender is hereby granted, as and to the extent provided by

sections 503(b) and 507(b) of the Bankruptcy Code, a separate allowed superpriority

administrative expense claim in the Chapter 11 Cases and any Successor Cases (the foregoing

superpriority claims shall be referred to as the "<u>Adequate Protection Superpriority Claims</u>");

provided, that, the Adequate Protection Superpriority Claims shall attach to Avoidance Actions

only after entry of the Final Order.   Except with respect to the (i) DIP Liens, (ii) DIP

Superpriority Claim, and (iii) Carve-Out, the Adequate Protection Superpriority Claims (I) shall

have priority in these Chapter 11 Cases under sections 105, 364(c)(1), 503(b) and 507(b) of the

Bankruptcy Code and otherwise over all administrative expense claims against the Debtors and

their estates, now existing or hereafter arising, of any kind or nature of the kinds specified in or

ordered pursuant to sections 503(b) or 507(b) of the Bankruptcy Code, and, if approved in the

Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may

become secured by a judgment lien or other non-consensual lien, levy or attachment, and (II) no

costs or expenses of administration, including, without limitation, professional fees allowed and

payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been

or may be incurred in these Chapter 11 Cases, or in any Successor Cases, and no priority claims

are, or will be, senior to, prior to or on a parity with the Adequate Protection Superpriority

Claims.  The Adequate Protection Superpriority Claims shall be payable from and have recourse

to all prepetition and postpetition property of the Debtors and all proceeds thereof.

(d)      **Section 507(b) Reservation**.  Nothing herein shall impair or modify the

Prepetition Secured Lender's rights under section 507(b) of the Bankruptcy Code in the event

that the adequate protection provided to the Prepetition Secured Lender hereunder is insufficient

to compensate for any Diminution in Value of its interests in the Prepetition Collateral during

these Chapter 11 Cases or any Successor Cases.

5.      **Right to Credit Bid**.

(a)    DIP Lender shall have the right to credit bid the amount of all accrued DIP Loan Obligations during any sale of the DIP Collateral (which credit bid rights under section 363(k) of the Bankruptcy Code shall not be impaired in any manner), including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code or otherwise.

(b)    Subject to the entry of the Final Order, the Prepetition Secured Lender shall have the right to credit bid the amount of the Prepetition Secured Obligations (which credit bid rights under section 363(k) of the Bankruptcy Code shall not be impaired in any manner), including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code or otherwise.

6.      **Perfection of DIP Liens and Adequate Protection Liens**.

(a)    **No Filings Necessary to Perfect.**  All security interests, liens, mortgages, deeds of trust and other interests and rights granted by the Debtors in favor of DIP Lender and the Prepetition Secured Lender shall be valid, binding, enforceable and perfected first priority interests subject only to the Carve-Out.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or mortgage agreement) to validate or

20

perfect the DIP Liens  and the Adequate Protection Liens or to entitle the DIP Liens and the Adequate Protection Liens to the priorities granted in this Interim Order.  Notwithstanding the foregoing, DIP Lender and the Prepetition Secured Lender may, each in their sole discretion, file such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable DIP Liens or Adequate Protection Liens, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code solely in order to do so, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date.

(b)    **Debtors' Cooperation With Perfection Filings**.    The Debtors shall execute and deliver to DIP Lender and the Prepetition Secured Creditor all such financing statements, mortgages, notices and other documents as such parties may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens and the Adequate Protection Liens.  DIP Lender and the Prepetition Secured Lender, in their respective sole discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the recording officer shall be authorized to file or record such copy of this Interim Order.

7.    **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**.

(a)    **Reservation of Third Party Rights; Challenge Period.**  Nothing in this Interim Order or the DIP Financing Documents shall prejudice the rights of any Committee or

any other party in interest, in each case solely to the extent the Committee or such other parties

in interest have been granted standing, to seek, solely in accordance with this paragraph 7, to

assert claims against the Prepetition Secured Lender on behalf of the Debtors, their creditors or

interest holders or to otherwise challenge any of the Debtors' Prepetition Secured Lien

Stipulations.  The Committee or such parties in interest, (i) in each case solely to the extent they

have been granted standing at such time, must commence a contested matter or adversary

proceeding, or (ii) if they have not been granted any such standing, must file a motion for

approval to commence and prosecute an adversary proceeding or contested matter (with a draft

complaint attached thereto), raising such objection or challenge, including without limitation,

asserting any claim against the Prepetition Secured Lender in the nature of a setoff, counterclaim

or defense to, as applicable, the Prepetition Secured Obligations (including but not limited to,

those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way

of suit against the Prepetition Secured Lender), within (a) in the case of the Committee and any

other party in interest, 50 days following the entry of the Interim Order, or (b) such later date

consented to in writing by the Prepetition Secured Lender in its sole discretion (the "Challenge

Period").  The date that is the next calendar day after the termination of the Challenge Period, in

the event that no objection or challenge is raised during the Challenge Period, shall be referred to

as the "Challenge Period Termination Date."  Upon the Challenge Period Termination Date, any

and all such challenges, claims, causes of action and objections by any party (including, without

limitation, the Committee, any chapter 11 or chapter 7 trustee appointed herein or in any

Successor Cases, and any other party in interest) shall be deemed to be forever waived and

barred, and the Prepetition Secured Obligations shall be deemed to be allowed in full as secured

claims within the meaning of section 506 of the Bankruptcy Code for all purposes in connection

with these Chapter 11 Cases or any Successor Cases, and the Debtors' Prepetition Secured Lien

Stipulations shall be binding on all creditors, interest holders and parties in interest (including,

without limitation, the Committee, any chapter 11 or chapter 7 trustee appointed herein or in any

Successor Cases).

(b)    **Defense Costs Included in Prepetition Secured Obligations; Only**

**Committee May Bring Action if Appointed.**    To the extent any such objection or complaint of

the Committee or other party in interest is timely filed in accordance with clause (a) immediately

above, the Prepetition Secured Lender shall be entitled to include such costs and expenses,

including but not limited to reasonable attorneys' fees, incurred in defending the objection or

complaint as part of the Prepetition Secured Obligations to the extent allowable under section

506(b) of the Bankruptcy Code.

8.    **Carve Out Provisions.**

(a)    **Carve Out.**    All liens and claims granted by this Interim Order shall be

subject to the Carve-Out.  As used in this Interim Order and the DIP Financing Documents, the

"Carve-Out" shall mean:

(i) quarterly fees required to be paid to the United States Trustee pursuant to 28

U.S.C. §1930(a)(6), plus interest, if applicable, at the statutory rate, and any fees

payable to the clerk of the Bankruptcy Court;

(ii) fees and expenses up to $25,000 incurred by a trustee appointed for the

Debtors under section 726(b) of the Bankruptcy Code;

(iii) all Allowed Fees (as defined below) of Case Professionals (as defined

below) incurred in the period prior to the occurrence of a Triggering Event

(such period, the "Pipeline Period") not to exceed the amounts for such Case

23

Professionals set forth in the Approved Budget for such period (less, as of any date of determination, all postpetition amounts actually paid to such Case Professionals in respect of fees and expenses incurred during the Pipeline Period); and

(iv) upon the occurrence of a Triggering Event, an aggregate amount for Allowed Fees of all Case Professionals incurred after the Triggering Event not to exceed $125,000 (which amount shall not be reduced for amounts paid or to be paid pursuant to clause (iii) above) (the sum of clauses (iii) and (iv), hereinafter, the "Professionals Carve-Out Cap").

The Professionals Carve-Out Cap shall be automatically reduced, on a dollar for dollar basis, by the amount of any unused retainers held by Case Professionals on the Petition Date. Any unused retainers held by Case Professionals on the Petition Date shall be used to pay any Allowed Fees of such Case Professionals before any payment of such Allowed Fees are made from the DIP Facility or DIP Collateral. For the avoidance of doubt, Allowed Fees that are budgeted to be paid in any week during the Pipeline Period that are unused in such week may be carried forward and used in any subsequent week during the Pipeline Period. As used herein, the terms: (i) "Allowed Fees" shall mean fees and expense reimbursement of Case Professionals solely to the extent such fees and expenses have been approved by an order of the Bankruptcy Court that has not been vacated or stayed; (ii) "Case Professionals" shall mean attorneys, accountants, financial advisors, consultants, and other professionals employed, pursuant to sections 327, 328, or 1103 of the Bankruptcy Code, as applicable, by the Debtors or any Committee; and (iii) "Triggering Event" shall mean the date that DIP Lender provides notice to the Debtors of the occurrence of an Event of Default and DIP Lender's termination of

the Pipeline Period for purposes of the Carve-Out.  The Carve-Out and any payments made in respect of the Carve-Out shall not reduce the amount of the DIP Loan Obligations.

(b)    **No Direct Payment Obligation; No Waiver of Right to Object to Fees.**

Without limiting (and solely to the extent of) its obligations to fund the Carve-Out, DIP Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of Case Professionals incurred in connection with the Chapter 11 Cases, any Successor Cases, or otherwise.  Nothing in this Interim Order or otherwise shall be construed:  (i) to obligate DIP Lender in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; (ii) to increase the Carve-Out if Allowed Fees are higher in fact than the estimated fees and disbursements of Case Professionals set forth in the Approved Budget; (iii) as consent to the allowance of any fees and expenses of Case Professionals; or (iv) to affect the rights of DIP Lender or any other party-in-interest to object to the allowance and payment of such fees and expenses.

(c)    **Carve-Out Escrow**.  Without limiting the rights of DIP Lender under the DIP Financing Documents or this Interim Order, upon DIP Lender's request at any time given or upon the earlier of (i) the occurrence of the Triggering Event or (ii) the date of the irrevocable termination of DIP Lender's commitments under the DIP Financing Documents, the Debtors shall be authorized and directed to request a draw under the DIP Facility equal to the unused portion of the Carve-Out, which amount shall be deposited by the Debtors into an interest-bearing escrow account at a financial institution acceptable to DIP Lender (the "Carve-Out Escrow Account").  Such funding of the Carve-Out Escrow Account shall be in full and complete satisfaction of any and all obligations of DIP Lender and the Prepetition Secured

Lender in respect of the Carve-Out, <u>provided</u>, <u>however</u>, that nothing in this Interim Order limits any requirement of the Debtors to pay all outstanding quarterly fees to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6) regardless of amount.

9.    **<u>Limitations on Use of DIP Facility, DIP Collateral, Cash Collateral, and Carve-Out</u>**.   The DIP Facility, DIP Collateral, and Carve-Out may not be used:   (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of DIP Lender or the Prepetition Secured Lender, or its respective rights and remedies under the DIP Financing Documents or the Prepetition Note or this Interim Order, as applicable, including, without limitation, for the payment of any services rendered by professionals retained by the Debtors or any Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration or similar relief, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the DIP Loan Obligations or the Prepetition Secured Obligations, (iii) for monetary, injunctive or other affirmative relief against DIP Lender or the Prepetition Secured Lender, or its collateral, or (iv) preventing, hindering or otherwise delaying the exercise by DIP Lender of any rights and/or remedies under this Interim Order, the DIP Financing Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by DIP Lender upon any of the DIP Collateral; (b) to make any distribution under a plan of reorganization in any of the Chapter 11 Cases; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of DIP Lender; (d) to pay any fees or similar amounts to any person

who has proposed or may propose to purchase interests in the Debtors without the prior written consent of DIP Lender; (e) to object to, contest, or interfere with in any way DIP Lender's enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred; (f) to use or seek to use Cash Collateral or to sell or otherwise dispose of DIP Collateral without the consent of DIP Lender; (g) to use or seek to use any insurance proceeds constituting DIP Collateral without the consent of DIP Lender; (h) to incur Indebtedness (as defined in the DIP Credit Agreement) outside the ordinary course of business without the prior consent of DIP Lender; (i) to object to or challenge in any way the claims, liens, or interests (including interests in the Prepetition Collateral or DIP Collateral) held by or on behalf of the Prepetition Secured Lender or DIP Lender; (j) to assert, commence or prosecute any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against DIP Lender or the Prepetition Secured Lender; (k) to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Secured Obligations, Prepetition Secured Liens, DIP Loan Obligations or DIP Liens or any other rights or interests of the Prepetition Secured Lender or DIP Lender; (l) to seek the modification, stay, or amendment of this Interim Order; or (m) to prevent, hinder or otherwise delay the exercise by DIP Lender or the Prepetition Secured Lender of any rights and remedies granted under this Interim Order.  Notwithstanding the foregoing, an aggregate amount not to exceed $15,000 of the DIP Facility (subject to the entry of the Final Order), the DIP Collateral, Cash Collateral, and Carve-Out may be used by any Committee to investigate the Prepetition Secured Liens within the Challenge Period.

10.    **Additional Covenants and DIP Protections**:  Without in any manner limiting the terms or requirements of the DIP Financing Documents or this Interim Order:

(a)    upon request, the Debtors shall provide DIP Lender and its respective representatives with access to the Debtors' premises, personnel, (including, but not limited to, senior management, and any chief restructuring officer or similar person or firm employed by the Debtors in these Chapter 11 Cases (such person and/or firm, a "<u>CRO</u>")), advisors, books and records (including reports and analyses prepared by any CRO), and the DIP Collateral, and the Debtors shall cooperate fully in all requests for information and data made by DIP Lender;

(b)    without in any manner limiting the Debtors' obligations under clause (a) above, the Debtors shall convene on the Friday immediately after the Petition Date, and during each week thereafter (at a designated time mutually acceptable to the Debtors and DIP Lender) a telephonic conference call  or calls (or, if requested by DIP Lender, an in person meeting or meetings) among the CRO and other members of management of the Debtors, and representatives of DIP Lender for the purpose of discussing (i) the Debtors' weekly results, (ii) any other matter relating to or bearing upon the financial and operational performance of the Debtors, or their actual and anticipated collections, and (iii) such other matters as shall be requested by DIP Lender;

(c)    Without in any manner altering the Debtors' obligations under the DIP Financing Documents, the Debtors shall not propose, file, support or pursue confirmation of a chapter 11 plan unless such plan provides for the payment in full in cash of all DIP Loan Obligations owed to DIP Lender; and

(d)    The Debtors shall comply with the sale process milestones set forth in the DIP Credit Agreement.

11.    **<u>Section 506(c) Claims</u>**.  Nothing contained in this Interim Order or the DIP Financing Documents shall be deemed a consent by DIP Lender or the Prepetition Secured

Lender to any charge, security interest, lien, assessment or claim against the DIP Collateral or Prepetition Collateral under section 506(c) of the Bankruptcy Code or otherwise.  Subject to entry of the Final Order, the Debtors hereby waive any right they may have to seek to impose any charge, security interest, lien, assessment or claim against DIP Lender's and the Prepetition Secured Lender's interests in the DIP Collateral and Prepetition Collateral, respectively, under section 506(c) of the Bankruptcy Code or otherwise.  Upon entry of the Final Order, and except with respect to the Carve-Out, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Cases at any time shall be charged against DIP Lender or the Prepetition Secured Lender, their claims, the Prepetition Collateral or DIP Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of DIP Lender or the Prepetition Secured Lender, as applicable, and no such consent shall be implied from any other action, inaction or acquiescence by DIP Lender or the Prepetition Secured Lender.

12.    **Collateral Rights**.  Unless DIP Lender has provided its prior written consent or all DIP Loan Obligations have been paid in full in cash (or will be paid in full in cash upon entry of an order approving indebtedness described in subparagraph (a) below), all commitments to lend have terminated, and all indemnity obligations under the DIP Credit Agreement have been cash collateralized, there shall not be entered in these Chapter 11 Cases, or in any Successor Cases, any order which authorizes any of the following:

(a)    the obtaining of credit or the incurring of indebtedness, pursuant to sections 364(c) or 364(d) of the Bankruptcy Code, that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral, the Prepetition Collateral, or the collateral subject to the Adequate Protection Liens of the Prepetition Secured

Lender, and/or entitled to priority administrative status which is equal or senior to those granted to DIP Lender or the Prepetition Secured Lender; or

        (b)    relief from stay by any person holding or asserting liens junior to the liens of DIP Lender on all or any portion of the DIP Collateral; or

        (c)    the Debtors' return of goods constituting DIP Collateral pursuant to section 546(h) of the Bankruptcy Code.

        13.    **Disposition of Collateral**.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, without the prior written consent of DIP Lender (and no such consent shall be implied, from any other action, inaction or acquiescence by DIP Lender or an order of this Court), except: (i) for sales of the Debtors' inventory in the ordinary course of business and otherwise in compliance with the DIP Credit Agreement, (ii) as otherwise provided for in the DIP Credit Agreement and this Interim Order, or (iii) as otherwise approved by the Court and consented to by DIP Lender.

        14.    **Proceeds of Subsequent Financing or Sale**.  If at any time prior to the repayment in full of all of the DIP Loan Obligations, any of the Debtors, any trustee, examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to section 364(b), 364(c), or 364(d) of the Bankruptcy Code whether or not in violation of the DIP Credit Agreement, any other DIP Financing Documents or this Interim Order, or shall receive proceeds from a sale of any DIP Collateral, then all of the cash proceeds derived from such credit, debt, or sale shall immediately be turned over to DIP Lender and applied to the DIP Loan Obligations as set forth in the Credit Agreement.

        15.    **Events of Default**.

The following shall constitute an event of default under this Interim Order, unless

expressly waived in writing by DIP Lender (collectively, the "Events of Default"):

(a)    the occurrence of an "Event of Default" under the DIP Financing Agreements provided, however, (i) the events of default contained  in sections 6.1(n) and 6.1(z)(ii) shall not be applicable during the period governed by this Interim Order and (ii) the Sale Milestones contained in clause (b) of schedule 4.10 to the DIP Credit Agreement is hereby modified to change "21 days after the Petition Date" to "22 days after the Petition Date",

(b)    the failure by the Debtors to observe or perform any of the terms, provisions, conditions, covenants or obligations under this Interim Order;

(c)    the reversal, vacatur or modification of any provision of this Interim Order; or

(d)    the failure of the Debtors to obtain entry of the Final Order on or before the date which is twenty-five (25) days after the Petition Date.

Until all DIP Loan Obligations are paid in full, the DIP Protections afforded to DIP Lender pursuant to this Interim Order and under the DIP Financing Documents, and any actions taken pursuant thereto, shall survive the entry of any order confirming a plan of reorganization or converting any of these Chapter 11 Cases to a Successor Case, and the DIP Protections shall continue in these Chapter 11 Cases and in any Successor Cases, and the DIP Protections granted herein shall maintain their priorities as provided by this Interim Order.

16.    **Rights and Remedies Upon Event of Default**.

(a)    Immediately upon the occurrence and during the continuation of an Event of Default, DIP Lender may declare (W) all DIP Loan Obligations owing under the DIP Financing Documents to be immediately due and payable, (X) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such

commitment remains in effect, (Y) the termination of the DIP Credit Agreement and any other

DIP Financing Documents as to any future liability or obligation of DIP Lender, but without

affecting any of the DIP Liens or the DIP Loan Obligations, and/or (Z) a termination, reduction

or restriction on the ability of the Debtors to use Cash Collateral (any such declaration by DIP

Lender shall be referred to herein as a "Termination Declaration").    The Termination

Declaration shall be given by email (or other electronic means) to counsel to the Debtors,

counsel to DIP Lender, counsel to any Committee and the United States Trustee (the date any

such Termination Declaration is made shall be referred to herein as the "Termination

Declaration Date").

        (b)    The DIP Loan Obligations shall be due and payable, without notice or

demand, on the Termination Declaration Date.    From and after the Termination Declaration

Date, the Debtors shall not have any right to use, and the Debtors and other parties in interest

shall not seek authority to use, Cash Collateral without the express written consent of DIP

Lender in its sole discretion.    Any automatic stay otherwise applicable to DIP Lender is hereby

modified so that five (5) days after the Termination Declaration Date (the "Remedies Notice

Period"), DIP Lender shall be entitled to exercise all rights and remedies against the DIP

Collateral in accordance with the DIP Financing Documents and this Interim Order and shall

be permitted to satisfy the DIP Loan Obligations and DIP Superpriority Claims, subject to the

Carve-Out.    During the Remedies Notice Period, the Debtors or the Committee shall be entitled

to seek an emergency hearing with the Court for the sole purpose of contesting whether an

Event of Default has occurred and/or is continuing, and seeking other relief in the event it is

determined that an Event of Default has not occurred and/or is continuing.    Unless the Court

determines during the Remedies Notice Period that an Event of Default has not occurred and/or

is not continuing, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order, and the Debtors shall have no right to use or seek to use Cash Collateral, and DIP Lender shall be permitted to exercise all remedies set forth herein, in the DIP Credit Agreement and the DIP Financing Documents, as applicable, and as otherwise available at law against the DIP Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interests in the DIP Collateral or any other rights and remedies granted to DIP Lender with respect thereto pursuant to the DIP Credit Agreement, DIP Financing Documents or this Interim Order, subject to the Carve-Out.

(c)    If DIP Lender exercises any of its rights and remedies upon the occurrence of an Event of Default under the DIP Financing Documents, DIP Lender may retain one or more agents to sell, lease or otherwise dispose of the DIP Collateral.  In any exercise of its rights and remedies upon an Event of Default under the DIP Financing Documents, DIP Lender is authorized to proceed under or pursuant to the DIP Financing Documents.

17.    **Proofs of Claim**.  DIP Lender and the Prepetition Secured Lender will not be required to file proofs of claim in the Chapter 11 Cases or any Successor Cases.  DIP Lender and the Prepetition Secured Lender are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit) proofs of claim in the Chapter 11 Cases or any Successor Cases.  Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of DIP Lender or the Prepetition Secured Parties.

18.    **Other Rights and Obligations**.

(a)    **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of Interim Order**.  Based on the findings set forth in this Interim Order

and in accordance with section 364(e) of the Bankruptcy Code, with respect to amounts advanced pursuant to this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter reversed or modified by a subsequent order of this or any other Court, DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code and, provided that the Interim Order is not stayed pending appeal, no such reversal or modification shall affect the validity and enforceability of any advances made under the DIP Facility or the liens or priority authorized or created hereby.   Notwithstanding any such reversal or modification, any claim granted to DIP Lender hereunder arising prior to the effective date of such reversal or modification of any DIP Protections granted to DIP Lender shall be governed in all respects by the original provisions of this Interim Order, and DIP Lender shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Protections granted herein, with respect to any such claim, provided that the Interim Order was not stayed at the time the claim arose.   Since the loans made pursuant to the DIP Credit Agreement are made in reliance on this Interim Order, the obligations owed DIP Lender prior to the effective date of any reversal or modification of this Interim Order cannot, as a result of any subsequent order in the Chapter 11 Cases or in any Successor Cases, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to DIP Lender under this Interim Order and/or the DIP Financing Documents, provided that the Interim Order was not stayed.

(b)    **Discharge Waiver.**   The Debtors expressly stipulate, and the Court finds and adjudicates that, the DIP Loan Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Loan Obligations have been paid in full in cash on or before

the effective date of a confirmed plan of reorganization. The Debtors shall not propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of reorganization or sale, of all DIP Loan Obligations.

(c) **Binding Effect**. All of the provisions of this Interim Order shall be binding upon and inure to the benefit of DIP Lender the Prepetition Secured Lender, the Debtors, any Committee, all other creditors of the Debtors and all other parties-in-interest, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in these Chapter 11 Cases, in any Successor Cases, or upon dismissal of any of the Chapter 11 Cases or any Successor Cases.

(d) **No Waiver**. The failure of the Prepetition Secured Lender or DIP Lender to seek relief or otherwise exercise their respective rights and remedies, as applicable, under the Prepetition Note or the DIP Financing Documents (as applicable), this Interim Order or otherwise, shall not constitute a waiver of any of the Prepetition Secured Lender's or DIP Lender's rights, as applicable, hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the Prepetition Secured Lender or DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Prepetition Secured Lender or DIP Lender to (i) request conversion of the Chapter 11 Cases to cases under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code and this Interim Order, a plan of reorganization; or (iii)

exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) the Prepetition Secured Lender or DIP Lender may have pursuant to this Interim Order, the Prepetition Note or the DIP Financing Documents (as applicable), or applicable law.

(e)    **No Third Party Rights**.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, landlord, lessor, equity holder or any direct, indirect, or incidental beneficiary.

(f)    **No Marshaling**.  The Prepetition Secured Lender and DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or DIP Collateral, as applicable.

(g)    **Section 552(b)**.  Subject to entry of the Final Order, DIP Lender and the Prepetition Secured Lender shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  The "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to DIP Lender or the Prepetition Secured Lender with respect to proceeds, product, offspring or profits of any of the DIP Collateral or the Prepetition Collateral.

(h)    **Amendment of DIP Financing Documents**.  The Debtors and DIP Lender may amend or waive any provision of the DIP Financing Documents, provided that such amendment or waiver, in the reasonable judgment of the Debtors and DIP Lender, is not material.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions of the DIP Financing Documents shall be effective unless set forth in writing, signed by on behalf of the Debtors and DIP Lender.

19.    **Limitation of Liability**.  Subject to the entry of the Final Order, in determining to provide the DIP Facility, permitting the use of Cash Collateral, or enforcing the rights and

remedies afforded to such parties under this Interim Order, the DIP Financing Documents, and/or the Prepetition Note, none of the DIP Lender or the Prepetition Secured Lender, as applicable, shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§9601 *et seq*. as amended, or any similar federal statute). Furthermore, nothing in this Interim Order or in the DIP Financing Documents shall in any way be construed or interpreted to impose or allow the imposition upon DIP Lender or the Prepetition Secured Lender any liability for any claims arising from the prepetition or postpetition activities of the Debtors.

20.    **Release and Indemnification of DIP Lender**.    The Debtors shall defend, indemnify, hold harmless and release DIP Lender and the Released Parties (as defined in the DIP Credit Agreement) to the extent set forth in the DIP Financing Documents.

21.    **Survival of Interim Order**.  All of the provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any chapter 11 plan in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or any Successor Cases, (iii) dismissing any of the Chapter 11 Cases, (iv) withdrawing of the reference of any of the Chapter 11 Cases from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court.  The terms and provisions of this Interim Order, including the DIP Protections granted pursuant to this Interim Order and the DIP Financing Documents and any protections granted to the Prepetition Secured Parties, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections and protections granted

to the Prepetition Secured Parties shall maintain their priority as provided by this Interim Order until (i) in the case of DIP Lender, until all of the DIP Loan Obligations of the Debtors to DIP Lender pursuant to the DIP Financing Documents (and this Interim Order) have been indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms); and (ii) in the case of the Prepetition Secured Lender, until all of the Prepetition Secured Obligations of the Debtors to the Prepetition Secured Lender pursuant to the Prepetition Note have been paid in full and discharged (including, without limitation, any and all adequate protection obligations and claims in respect thereof).

(a)    **Inconsistency**.  In the event of any inconsistency between the terms and conditions of the DIP Financing Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

(b)    **Enforceability**.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry of this Interim Order. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.  The rights of all parties in interest to object to the terms of the Final Order, the DIP Credit Agreement and any other DIP Financing Document at the Final Hearing are expressly reserved.

(c)    **Objections Overruled**.  All objections to the Motion to the extent not withdrawn or resolved, are hereby overruled.

(d)    **No Waivers or Modification of Interim Order**.    The Debtors irrevocably waive any right to seek any modification or extension of this Interim Order without the prior written consent of DIP Lender and no such consent shall be implied by any other action, inaction or acquiescence of DIP Lender.

22.    **Headings.**    All paragraph headings used in this Interim Order are for ease of reference only and are not to affect the construction hereof or to be taken into consideration in the interpretation hereof.

23.    **Final Hearing**.

(a)    The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility shall be held before The Honorable Shelley C. Chapman at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, 6th Floor, Courtroom 623, New York, New York 10004, on **February 5, 2016 at 10:00 a.m. (prevailing Eastern Time)**.    If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtors and entered by this Court.

(b)    On or before January 20, 2016, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim Order, the proposed Final Order and the Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for the Committee, if any; (d) the Office of the United States Trustee, (e) the Internal Revenue Service, (f) counsel to DIP Lender, (g) counsel to the Prepetition Secured Lender, (h) the Debtors' current landlords, (i) the Securities and Exchange Commission, (j) the

Office of the Attorney General for the State of New York, (k) the United States Department of Justice, and (l) applicable state taxing authorities.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Bankruptcy Court no later than **February 4, 2016 at 12:00 p.m. (prevailing Eastern Time)** which objections shall be served so that the same are received on or before such date by:  (a) counsel for the Debtors, Tarter Krinsky & Drogin LLP, 1350 Broadway, New York, New York 10018, Attn: Scott S. Markowitz and Arthur Goldstein (Facsimile:   212-216-8001,   E-mail:   smarkowitz@tarterkrinsky.com   and agoldstein@tarterkrinsky.com); (b) counsel for DIP Lender, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036, Attn: Scott K. Rutsky and Jared D. Zajac (Facsimile: 212-969-2900; E-mail: srutsky@proskauer.com and jzajac@proskauer.com); (c) counsel for any Committee; and (d) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014, Attn:  Susan Golden.

     24.    **Retention of Jurisdiction**.  The Court has and will retain jurisdiction to enforce this Interim Order.

Dated:  January 19, 2016
      New York, New York

                /S/ Shelley C. Chapman
              UNITED STATES BANKRUPTCY JUDGE