**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| NYC Constructors Inc., *et al.*,[1] | ) | Case No. 16-10069 (SCC) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**ORDER GRANTING MOTION (A) AUTHORIZING DEBTORS' ENTRY INTO**
**STALKING HORSE PURCHASE AGREEMENT, (B) AUTHORIZING**
**AND APPROVING BIDDING PROCEDURES AND BREAK-UP FEE,**
**(C) APPROVING NOTICE PROCEDURES, (D) SETTING A DATE**
**FOR THE SALE HEARING, AND (E) GRANTING RELATED RELIEF**

Upon consideration of the motion [ECF No. 8] (the "Motion")[2] of the above-captioned

debtors and debtors in possession (collectively, the "Debtors"), pursuant to sections 105, 363 and

365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and

9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1

of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), for

entry of an order (this "Bidding Procedures Order"): (i) authorizing the Debtors to enter into that

certain Asset Purchase Agreement, dated as of January 14, 2016 (the "Stalking Horse Purchase

Agreement") between the Debtors and Banker Steel NY, LLC and Banker Steel NJ, LLC

(together, the "Stalking Horse Purchaser") for the sale (the "Sale") of substantially all of the

Debtors' assets (the "Acquired Assets") free and clear of all liens, claims, interests and

encumbrances; (ii) approving bidding procedures (the "Bidding Procedures") to be implemented

in connection with such Sale; (iii) establishing the dates, times, and locations of the deadline to

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number
are NYC Constructors Inc. (7618) and MRP, L.L.C. (0498).

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed thereto in the Motion.

bid on the Acquired Assets, the auction of the Acquired Assets (the "Auction"), and the sale

hearing to approve the sale of the Acquired Assets (the "Sale Hearing"), and approving the form

of notice of each of the foregoing; (iv) approving the form and manner of notice of the Debtors'

intent to assume and assign to the Successful Bidder or Backup Bidder (as such terms are defined

in the Bidding Procedures), the executory contracts and unexpired leases (each a "Contract or

Lease" and, collectively, the "Contracts and Leases"), and the corresponding cure amounts (the

"Cure Amounts") required to be paid in connection with such assumption and assignment; and

(v) granting related relief; and the Court having determined that the relief provided herein is in

the best interest of the Debtors, their estates, creditors and other parties in interest; and due and

adequate notice of the Motion having been given under the circumstances; and upon the record

of the hearing (the "Bidding Procedures Hearing") on the Motion held before the Court on

February 5, 2016, and the full record of these cases; and after due deliberation thereon; and good

and sufficient cause appearing therefore:

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     This Court has jurisdiction over the Motion and the transactions

contemplated therein pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue in this district is proper under 28

U.S.C. §§ 1408 and 1409.

B.     The Motion and this Bidding Procedures Order comply with all applicable

provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

C.     The Debtors have provided due and proper notice of the Motion, the relief

sought therein, and the Bidding Procedures Hearing to the parties listed on the affidavit of

service [ECF No. 27].   A reasonable opportunity to object or be heard regarding the relief

provided herein with respect to the Motion (including, without limitation, with respect to the

Bidding Procedures and Bid Protections (as defined below)) has been afforded to all parties in interest.  No other or further notice is required except as set forth herein with respect to the Auction and Sale Hearing.

D.    The Debtors' proposed notice of the Motion, the Bidding Procedures, the Auction, the Sale and the Sale Hearing is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

E.    The Notice of Assumption and Assignment (as defined below) is reasonably calculated to provide all counterparties to the Debtors' Contracts and Leases with proper notice of the potential assumption and assignment of their Contract or Lease and any proposed Cure Amount relating thereto, provided, however, that the mere listing of any Contract or Lease on the Notice of Assumption and Assignment does not require or guarantee that such Contract or Lease actually will be assumed and assigned, and all rights of the Debtors and the Stalking Horse Purchaser with respect to such Contracts and Leases are reserved.

F.    The Debtors have articulated good and sufficient business reasons for this Court to (i) approve the Bidding Procedures; (ii) approve the Stalking Horse Purchaser as the stalking horse bidder; (iii) approve the Break-Up Fee and Expense Reimbursement (the Break-Up Fee and Expense Reimbursement occasionally are collectively referred to herein as the "Bid Protections") as provided in the Stalking Horse Purchase Agreement; (iv) approve the scheduling of a bid deadline, auction and sale hearing for the sale of the Acquired Assets; and (v) approve the establishment of procedures to fix the Cure Amounts to be paid under section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Contracts and Leases.

G.    The Bid Protections, to the extent payable under the Stalking Horse Purchase Agreement, (i) are and shall be deemed an actual and necessary cost and expense of

preserving the Debtors' estates within the meaning of sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code; (ii) are of substantial benefit to the Debtors' estates, will encourage a competitive bidding process, and will not pose a detriment to unsecured creditors; (iii) are reasonable and appropriate, including in light of the size and nature of the transaction contemplated by the Stalking Horse Purchase Agreement, the necessity to announce a sale transaction for the Debtors, and the efforts that have been and will be expended by the Stalking Horse Purchaser; (iv) have been negotiated among the Debtors, the Stalking Horse Purchaser and their respective advisors at arms' length and in good faith, without self-dealing or manipulation; and (v) are necessary to ensure that the Stalking Horse Purchaser will continue to pursue the proposed transaction. The Stalking Horse Purchaser has represented to the Debtors that it is unwilling to commit to purchase the Acquired Assets under the terms of the Stalking Horse Purchase Agreement unless the Stalking Horse Purchaser is granted the Bid Protections.

H.      Entry into the Stalking Horse Purchase Agreement is in the best interest of the Debtors, the Debtors' estates and their creditors. The Stalking Horse Purchase Agreement will enable the Debtors to secure an adequate floor for the Auction and will provide a clear benefit to the Debtors' estates. The terms of the Stalking Horse Purchase Agreement were negotiated by the Debtors and the Stalking Horse Purchaser in good faith and at arm's length.

I.      The Bidding Procedures are fair, reasonable, and appropriate and represent the best method for maximizing the realizable value of the Acquired Assets.

J.      The entry of this Bidding Procedures Order and the granting of the relief set forth herein are in the best interests of the Debtors, their estates, creditors, and other parties in interest.

K.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The relief requested in the Motion as it relates to the Bidding Procedures and Bid Protections, the Debtors' entry into the Stalking Horse Purchase Agreement, and the scheduling of, and notice to be provided with respect to, the sale process, the Auction and the Sale Hearing, is granted and approved as set forth in this Bidding Procedures Order.

2.      All objections and responses to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3.      The Bidding Procedures, attached hereto as **Exhibit A**, are hereby incorporated into and form a part of this Bidding Procedures Order and are approved in their entirety, and shall apply with respect to the sale of the Acquired Assets.  The failure specifically to include or reference a particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of any such provision. The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.  In the event of an inconsistency between this Bidding Procedures Order and the Bidding Procedures, the Bidding Procedures Order shall prevail.

4.      The Debtors are hereby authorized to pursue a sale of the Acquired Assets and enter into the transactions contemplated by the Stalking Horse Purchase Agreement by conducting an Auction in accordance with the Bidding Procedures.

5.      The Debtors are hereby authorized to enter into the Stalking Horse Purchase Agreement.  The (i) provisions contained in Article V and VI of the Stalking Horse Purchase Agreement, and (ii) Bid Protections contained herein and in the Stalking Horse Purchase Agreement, including, without limitation, in Section 8.03 of the Stalking Horse Purchase Agreement, are hereby approved, authorized and binding upon the Debtors, their estates, creditors and other parties in interest.  Any schedules to the Stalking Horse Purchase Agreement marked "confidential" are not required to be attached to the Stalking Horse Purchase Agreement as filed with the Court but will be included in the Diligence Materials (as defined in the Bidding Procedures) and made available as provided in the Bidding Procedures.

6.      Subject to the terms of the Stalking Horse Purchase Agreement, the Debtors' obligation to pay the Bid Protections shall survive termination of the Stalking Horse Purchase Agreement, shall constitute a superpriority administrative claim against the Debtors' estates pursuant to sections 105(a), 503(b) and 364(c)(1) of the Bankruptcy Code and shall be senior to, and have priority over, all other claims against the Debtors, and shall be paid to the Stalking Horse Purchaser as provided in the Stalking Horse Purchase Agreement.  Without limiting the foregoing, to the extent that the Stalking Horse Purchaser is <u>not</u> the Successful Bidder, (a) the Successful Bidder is authorized and directed to pay the Bid Protections directly to the Stalking Horse Purchaser by wire transfer of immediately available good funds to an account specified by the Stalking Horse Purchaser at the closing of any Alternative Transaction (as defined in the Bidding Procedures) with the Successful Bidder; and (b) if for any reason such Successful Bidder fails to pay the Bid Protections directly to the Stalking Horse Purchaser, the Debtors are authorized and directed to pay the Bid Protections to the Stalking Horse Purchaser from the proceeds of the Alternative Transaction without further order of the Court.

7.      Except for the Stalking Horse Purchaser, no other party submitting an offer, Bid or Qualified Bid (as such terms are defined in the Bidding Procedures) for the Acquired Assets shall be entitled to any expense reimbursement or break-up, termination or similar fee or payment.

8.      As further described in the Bidding Procedures, the deadline for submitting bids for the Acquired Assets (the "Bid Deadline") is March 15, 2016 at 5:00 p.m. (prevailing Eastern Time).  No bid shall be deemed to be a Qualified Bid or otherwise considered for any purposes unless such bid meets the requirements set forth in the Bidding Procedures.

9.      If a Qualified Bid(s), other than the bid of the Stalking Horse Purchaser pursuant to the Stalking Horse Purchase Agreement, is timely received by the Debtors in accordance with the Bidding Procedures, the Auction shall take place on March 18, 2016 at 10:00 a.m. (prevailing Eastern Time) at the offices of Tarter Krinsky & Drogin LLP, 1350 Broadway, New York, New York 10018, or such other place and time as the Debtors shall notify all Qualified Bidders, any official committee of unsecured creditors (the "Committee") appointed in the Debtors' chapter 11 cases, the Debtors' postpetition secured lender (the "DIP Lender"), and other invitees.  If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held.

10.      The DIP Lender and the Debtors' prepetition secured lender (the "Prepetition Secured Lender"), or any affiliated assignees thereof, shall be deemed Qualified Bidders and, pursuant to section 363(k) of the Bankruptcy Code, shall be entitled to credit bid all or a portion of their respective claims against the Debtors as a Qualified Bid, without otherwise complying with the Bid Procedures.

11.    Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

12.    The Auction shall be conducted in accordance with the Bidding Procedures.

13.    The Auction will be conducted openly.

14.    Bidding at the Auction will be transcribed or videotaped.

15.    The Sale Hearing shall be held before this Court on March 24, 2016 at 10:00 a.m. (prevailing Eastern Time), or as soon thereafter as counsel and interested parties may be heard.

16.    The notices described in subparagraphs (a) – (d) below are approved and shall be good and sufficient, and no other or further notice shall be required if given as follows:

a.    On or before three (3) business days after entry of this Bidding Procedures Order, or as soon thereafter as such parties can be identified, the Debtors will cause (a) a notice in substantially the form annexed as **Exhibit B** hereto (the "Notice of Auction and Sale Hearing"); and (b) a copy of the Bidding Procedures Order to be sent by first-class mail postage prepaid, to the following: (i) counsel to the Stalking Horse Bidder, Proskauer Rose LLP; (ii) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014; (iii) counsel for the Committee, but if no such committee has been appointed, to the Debtors' twenty (20) largest unsecured creditors on a consolidated basis; (iv) counsel to the DIP Lender; (v) all taxing authorities in the states where the Acquired Assets are located, including the Internal Revenue Service, and all other federal, state and local taxing and regulatory authorities known to the Debtors to assert jurisdiction over the Acquired Assets or which are reasonably expected by the Debtors to have claims, contingent or otherwise, in connection with the ownership of the Acquired Assets, or to have any known interest in the relief requested by the Motion; (vi) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002, 6004 or 6006; (vii) all persons or entities known or reasonably believed to have asserted any lien, claim, encumbrance, right of first refusal, or other interest in or upon any of the

Acquired Assets; (viii) the non-debtor parties to the Contracts and Leases and any parties who are known to claim interests therein; (ix) the Securities and Exchange Commission; (x) the United States Attorney's office; (xi) Attorneys General in the states where the Acquired Assets are located; (xii) the United States Environmental Protection Agency; (xiii) any applicable state and local environmental agencies; (xiv) the New Jersey Department of the Treasury, Division of Taxation, Bulk Sale Unit; (xv) the Office of the Attorney General for the State of New Jersey, Tax, Bankruptcy & Debt Recovery Section; (xvi) all parties to any litigation involving the Debtor; and (xvii) any party that the Debtors believe may have an interest, or that has previously expressed and interest, in purchasing the Acquired Assets.[3]

b.      On or before three (3) business days after entry of the Bidding Procedures Order, the Debtors will serve the Notice of Auction and Sale Hearing on all known creditors of the Debtors;

c.      On or before seven (7) days after entry of the Bidding Procedures Order, subject to applicable submission deadlines, the Debtors will publish an abbreviated version of the Notice of Auction and Sale Hearing at least once in (i) the local edition of at least one publication of general circulation <u>and</u> (ii) an online industry/trade publication.

d.      On or before three (3) business days after the entry of the Bidding Procedures Order, the Debtors shall serve by first class mail or hand delivery, a notice, substantially in the form attached hereto as **<u>Exhibit C</u>**, of potential assumption, assignment and/or transfer of the Contracts and Leases (the "<u>Notice of Assumption and Assignment</u>") on all non-debtor parties to the Contracts and Leases.  The Notice of Assumption and Assignment shall identify the Cure Amounts that the Debtors believe must be paid to cure all prepetition defaults under the Contracts and Leases.  In addition, if the Debtors identify additional Contracts or Leases that might be assumed by the Debtors and assigned to the Successful Bidder not set forth in the original Notice of Assumption and Assignment, the Debtors shall promptly send a supplemental notice (a "<u>Supplemental Notice of Assumption and Assignment</u>") to the applicable counterparties to such additional Contracts and Leases.

---

[3]    The Notice of Auction and Sale Hearing will direct parties to contact the Debtors' counsel for more information and will provide that any party in interest that wishes to obtain a copy of any related document, subject to the execution and delivery of a confidentiality agreement acceptable to the Debtors, may make a request in writing as specified in the Notice of Auction and Sale Hearing.

17.    The Notice of Auction and Sale Hearing and the Notice of Assumption and Assignment to be issued in connection with the proposed sale of the Acquired Assets, substantially in the forms annexed hereto as **Exhibits B and C**, respectively, are approved.

18.    Objections, if any, to the relief sought in the Motion, including objections to the Sale of the Acquired Assets free and clear of all liens, claims, interests and encumbrances, must:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the Southern District of New York on or before seven (7) days prior to the Sale Hearing pursuant to Federal Rule 6004(b), or such later date and time as the Debtors may agree; and (d) be served so as to be received on the same day by: (i) counsel to the Debtors, Tarter Krinsky & Drogin LLP, 1350 Broadway, New York, New York 10018, Attn: Scott S. Markowitz and Arthur Goldstein; (ii) counsel to the Stalking Horse Purchaser, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: Scott K. Rutsky and Jared D. Zajac; (iii) counsel to the Committee, if any; and (iv) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014 (collectively, the "Notice Parties").  All objections must state with specificity the nature of such objection and will be heard by the Court at the Sale Hearing.

19.    Any written replies to objections to the relief sought in the Motion with respect to the Sale shall be filed by 12:00 p.m. (prevailing Eastern Time) on the date that is two (2) business days before the Sale Hearing.

20.    Any objection by a non-debtor party to a Contract or Lease (a "Cure Amount/Assignment Objection") to (a) its scheduled Cure Amount and/or (b) to the proposed assumption, assignment and/or transfer of such Contract or Lease, including any objections relating to the adequate assurance of future performance by the Stalking Horse Purchaser, must

be in writing, filed with the Court, and be actually received by the Notice Parties by the later of (i) 5:00 p.m. (prevailing Eastern Time) on the date that is seven (7) days prior to the Sale Hearing, or (ii) 5:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) days after service of the relevant Supplemental Notice of Assumption and Assignment (such later date, the "Cure/Assignment Objection Deadline").  A Cure Amount/Assignment Objection must set forth the specific default alleged under the applicable Contract or Lease and claim a specific monetary amount that differs from the applicable Cure Amount, if any, and/or further information required of the Stalking Horse Purchaser with respect to adequate assurance of future performance. Notwithstanding the foregoing, as provided in paragraph 25 below, each non-debtor party shall retain the right to object to the assumption and assignment of its Contract or Lease based solely on the issue of whether the Successful Bidder or Backup Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code in the event the Stalking Horse Purchaser is not the Successful Bidder.

21.    If no Cure Amount/Assignment Objection is received by the Cure/Assignment Objection Deadline to a Contract or Lease, then the assumption and assignment of such Contract or Lease may be authorized pursuant to section 365 of the Bankruptcy Code and the applicable Cure Amount, if any, shall be binding upon the non-debtor counterparty to such Contract or Lease for all purposes and shall constitute a final determination of the Cure Amount required to be paid to such Contract or Lease counterparty in connection with the assignment of such Contract or Lease to the applicable Successful Bidder.  The non-debtor counterparty to such Contract or Lease shall be (i) deemed to have waived its right to object to, contest, condition, or otherwise restrict the assumption and/or assignment of such Contract or Lease, and (ii) forever barred from objecting to the assumption and/or assignment of

such Contract or Lease or the Cure Amount (including, without limitation, from asserting any additional cure or other amounts with respect to the Contract or Lease arising prior to such assumption and assignment).  Furthermore, upon the assumption of such Contract or Lease, the applicable Successful Bidder shall enjoy all of the applicable Debtor's rights and benefits thereunder without the necessity of obtaining any party's written consent to such Debtor's assumption and/or assignment of such rights and benefits.

22.    If an objection challenges a Cure Amount (or asserts any other objection to assumption and assignment of a Contract or Lease), the objection must set forth the cure amount being claimed by the objecting party with appropriate documentation in support thereof, and specify (with appropriate supporting documentation) the factual and legal basis for any other objection to the assumption and assignment of such Contract or Lease.  Upon receipt of a timely filed Cure Amount/Assignment Objection, the Debtors, in consultation with the Stalking Horse Purchaser, is authorized, but not directed, to resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting counterparty to any Contract or Lease without further order of the Court.  In the event that the Debtors and any objecting party are unable to resolve consensually any timely filed Cure Amount/Assignment Objection, the Court will resolve any such Cure Amount/Assignment Objection at the Sale Hearing (or such other date and time as is fixed by the Court).

23.    Except as may otherwise be agreed to by the Successful Bidder and the non-debtor party or parties to a Contract or Lease, at or promptly following the closing of the Sale, the cure of any defaults under Contracts and Leases necessary to permit assumption and assignment thereof in accordance with section 365(b) of the Bankruptcy Code, shall be by (i) payment of the undisputed Cure Amount, (ii) payment of the Cure Amount judicially determined

by the Court to be the correct amount, and/or (iii) the establishment of a reserve (either in an amount agreed to by the parties or established by the Court) with respect to any disputed Cure Amount that has not been resolved at or prior to the Sale Hearing (which reserve shall for all purposes constitute the maximum Cure Amount that may be due and payable in connection with the assumption and assignment of such Contract and Lease).

24.     Within one (1) business day after the conclusion of the Auction for the Acquired Assets, the Debtors will file a statement setting forth the identity of the Successful Bidder and Backup Bidder for the Acquired Assets, and the total price received for the Acquired Assets and serve such statement on the United States Trustee in accordance with Federal Rule 6004(f)(1).

25.     Within one (1) business day after the conclusion of the Auction for the Acquired Assets, the Debtors will serve a notice identifying the Successful Bidder and Backup Bidder to the non-debtor parties to the Contracts and Leases that have been identified in such Successful Bid and Backup Bid.  In the event the Stalking Horse Purchaser is <u>not</u> the Successful Bidder, the non-debtor parties to the Contracts and Leases will have until 5:00 p.m. on the day before the Sale Hearing (the "<u>Adequate Assurance Objection Deadline</u>") to file a written objection to the assumption and assignment of such Contract or Lease <u>solely</u> on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.  For the sake of clarity, <u>any and all</u> objections to the assumption and assignment of a Contract or Lease <u>to the Stalking Horse Purchaser</u>, including without limitation objections based upon adequate assurance of future performance, must be filed by the Cure/Assignment Objection Deadline specified in paragraph 20 above.

26.     The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

27.     Except as otherwise provided in the Stalking Horse Purchase Agreement and this Bidding Procedures Order, the Debtors further reserve the right as they may reasonably determine to be in the best interests of their estates, subject to conformity with the Bidding Procedures, and in consultation with the Committee, if any, to:  (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest and otherwise best proposal and which is the next highest and otherwise best proposal; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (e) waive terms and conditions set forth herein with respect to all potential bidders; (f) impose additional terms and conditions with respect to all potential bidders; (g) extend the deadlines set forth herein; (h) adjourn or cancel the Auction and/or Sale Hearing without further notice; and (i) modify the Bidding Procedures as the Debtors may reasonably determine to be in the best interest of their estates.

28.     The Stalking Horse Purchaser shall have standing to contest the Debtors' selection of the Successful Bid for the Acquired Assets; provided, however, that such standing shall not be interpreted as an admission by the Debtors or any other parties in interest that any such contest by the Stalking Horse Purchaser is valid or otherwise has merit, and the rights of the Debtors and all other parties in interest with respect to any such contest are expressly reserved.

29.     To the extent that any chapter 11 plan confirmed in these cases or any order confirming any such plan or any other order in these cases (including any order entered

after conversion of these cases to cases under chapter 7 of the Bankruptcy Code) alters, conflicts

with or derogates from the provisions of this Bidding Procedures Order, the provisions of this

Bidding Procedures Order shall control.  The Debtors' obligations under this Bidding Procedures

Order, the provisions of this Bidding Procedures Order pertaining to Bidding Procedures and the

portions of the Stalking Horse Purchase Agreement pertaining to Bidding Procedures (including

all obligations in respect of the Bid Protections) shall survive confirmation of any plan of

reorganization or discharge of claims thereunder and shall be binding upon the Debtors and any

reorganized or reconstituted Debtors, as the case may be, after the effective date of a confirmed

plan in these cases, and shall also survive any order converting these cases to cases under chapter

7 of the Bankruptcy Code and any order entered after such conversion, and shall be binding upon

any chapter 7 or other trustee appointed in these or any successor cases.

30.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are

waived and this Bidding Procedures Order shall be effective immediately upon its entry.

31.     All time periods set forth in this Bidding Procedures Order shall be

calculated in accordance with Bankruptcy Rule 9006(a).

32.     This Court shall retain jurisdiction over any matters related to or arising

from the implementation of this Bidding Procedures Order.

Dated:  February 5, 2016
        New York, New York

                                        /S/ Shelley C. Chapman
                                        HONORABLE SHELLEY C. CHAPMAN
                                        UNITED STATES BANKRUPTCY JUDGE

## Exhibit A to Bidding Procedures Order

[Bidding Procedures]

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| NYC Constructors Inc., *et al.*,[1] | ) | Case No. 16-10069 (SCC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## BIDDING PROCEDURES

By motion dated January 14, 2016 (the "Motion"),[2] the above-captioned debtors and debtors in possession (the "Debtors") sought approval of, among other things, the procedures through which they will conduct the sale (the "Sale") of substantially all of the assets of the Debtors (collectively, the "Acquired Assets").

On February 5, 2016, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order (the "Bidding Procedures Order"), which, among other things, authorized the Debtors to conduct the Sale of the Acquired Assets through the process and procedures set forth below (the "Bidding Procedures"). The Debtors reserve the right to modify the Bidding Procedures, provided that any such modification shall not (i) be inconsistent with the Bidding Procedures Order, or (ii) adversely impact or alter the rights of the Stalking Horse Purchaser (as defined below).

The Sale will be subject to competitive bidding as set forth herein and approval of the Court pursuant to sections 105, 363 and 365 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

The Debtors entered into that certain Asset Purchase Agreement, dated as of January 14, 2016 (the "Stalking Horse Purchase Agreement"), between the Debtors and Banker Steel NY, LLC and Banker Steel NJ, LLC (together, the "Stalking Horse Purchaser") for the Acquired Assets. A copy of the Stalking Horse Purchase Agreement is attached to the Motion as Exhibit A. The Debtors are soliciting bids for the Acquired Assets based on the terms of the Stalking Horse Purchase Agreement and, if competing bids are received that comply with these Bidding Procedures, the Debtors will conduct an auction to determine the highest and otherwise best bid for the Acquired Assets.

At the conclusion of the auction process, if applicable, the Debtors, in consultation with the official committee of unsecured creditors (the "Committee") appointed in the Debtors'

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number are NYC Constructors Inc. (7618) and MRP, L.L.C. (0498).

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion, the Bidding Procedures Order, or the Stalking Horse Purchase Agreement, as applicable.

chapter 11 cases, if any, will determine which bid, or combination of bids, constitutes the highest and best offer for the Acquired Assets pursuant to the criteria set forth in the Bidding Procedures Order and these Bidding Procedures.

**Assets to Be Sold**

The Acquired Assets include substantially all of the Debtors' operating assets, equipment, inventory and other personal property interests, and intellectual property rights, along with certain executory contracts and unexpired leases. The Debtors are offering to sell the Acquired Assets to one or more bidders.

**Access to Diligence Materials**

A party who qualifies for access to Diligence Materials shall be a "Preliminary Interested Bidder." All due diligence requests must be directed to the Debtors' chief restructuring officer at the address set forth herein.

To participate in the bidding process and to receive access to due diligence materials (the "Diligence Materials"), a party (other than the Stalking Horse Purchaser) must submit to the Debtors (i) an executed confidentiality agreement in form and substance satisfactory to the Debtors, and (ii) current financial statements or other evidence demonstrating the party's financial capability with respect to an Alternative Transaction (as defined below) as determined by the Debtors; provided, however, that in the case of a newly formed entity, the equity holder(s) of the Preliminary Interested Bidder shall either guarantee the obligations of the Preliminary Interested Bidder or provide such other form of financial disclosure and credit-quality support information or enhancement acceptable to the Debtors.

Each Preliminary Interested Bidder and Qualified Bidder (as defined below) shall comply with all reasonable requests for additional information by the Debtors or their advisors regarding such bidder (and its equity holders, members and/or investors, as applicable, and its financing sources) and its contemplated transaction. Failure by a Preliminary Interested Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that such bidder is not a Qualified Bidder or that a Bid (as defined below) by such party is not a Qualified Bid.

**Due Diligence**

Until the Bid Deadline (as defined below) and in addition to the Diligence Materials, the Debtors will provide any Preliminary Interested Bidder such due diligence access or additional information as a Preliminary Interested Bidder may reasonably request and that the Debtors determine to be reasonable and appropriate under the circumstances. For any Preliminary Interested Bidder who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold any Diligence Materials that the Debtors, in their sole discretion, determines are business-sensitive or otherwise not appropriate for disclosure to such Preliminary Interested Bidder.

Preliminary Interested Bidders must direct all additional due diligence requests to the Debtors' chief restructuring officer, William H. Henrich, c/o Getzler Henrich & Associates LLC,

295 Madison Avenue, 20th Floor, New York, New York 10017 (email whenrich@getzlerhenrich.com). The Debtors will coordinate all reasonable requests for additional information and due diligence access from Preliminary Interested Bidders. In the event that any such due diligence material is in written form and has not previously been provided to any other Preliminary Interested Bidder, the Debtors will simultaneously provide such materials to all Preliminary Interested Bidders and the Stalking Horse Purchaser.

Unless the Debtors determine otherwise, the availability of additional due diligence to a Preliminary Interested Bidder will cease if (i) the Preliminary Interested Bidder does not become a Qualified Bidder, or (ii) if the auction process otherwise terminates.

**Auction Qualification Process**

To be eligible to participate in the Auction (defined below), each offer, solicitation or proposal (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder"), must be determined by the Debtors to satisfy each of the conditions set forth below. A Bid may not be considered qualified for the Auction if such Bid does not satisfy each of the following conditions:

a.    Good Faith Deposit: Each Bid for the Acquired Assets (other than the offer of the Stalking Horse Purchaser pursuant to the Stalking Horse Purchase Agreement) must be accompanied by a cash deposit equal to 10% of the cash purchase price of such Bid which will be deposited into an interest bearing escrow account to be identified and established by the Debtors (the "Good Faith Deposit").

b.    Same or Better Terms: Each Bid for the Acquired Assets must be on terms that, in the Debtors' business judgment, are the same or better than the terms of the Stalking Horse Purchase Agreement and must be for all or substantially all of the Acquired Assets.

c.    Executed Agreement: Each Bid for the Acquired Assets must be based on the Stalking Horse Purchase Agreement and include fully executed transaction documents, signed by an authorized representative of such Bidder (the "Modified Asset Purchase Agreement"), pursuant to which the Bidder proposes to effectuate the transaction for the Acquired Assets (an "Alternative Transaction"). A Bid for the Acquired Assets shall also include a copy of the Modified Asset Purchase Agreement marked against the Stalking Horse Purchase Agreement to show all changes requested by the Bidder (including, without limitation, those related to purchase price and to remove all provisions that apply only to the Stalking Horse Purchaser as the stalking horse bidder such as the Break-Up Fee and Expense Reimbursement provisions that are contained in the Stalking Horse Purchase Agreement).

d.    Minimum Bid: Each Bid for the Acquired Assets **must** propose a minimum purchase price comprised of each of the following: (i) cash and/or noncash consideration in an amount that is at least equal to the aggregate consideration

provided by the Stalking Horse Purchase Agreement; without limiting the foregoing, each Bid **must** include cash consideration in an amount necessary to satisfy in full all outstanding DIP Loan Obligations and Prepetition Secured Obligations (as each term is defined in the interim order approving the Debtors' postpetition credit facility); ***plus*** (ii) additional cash consideration in an amount equal to the sum of (x) the full dollar value of the Break-Up Fee payable to the Stalking Horse Purchaser, (y) the full dollar value of the Expense Reimbursement[3] payable to the Stalking Horse Purchaser, and (z) $100,000.

e.    Designation of Assumed Contracts and Leases:  A Bid for the Acquired Assets must identify any and all executory contracts and unexpired leases of the Debtors that the Bidder wishes to have assumed and assigned to it pursuant to an Alternative Transaction.

f.    Assumption of Liabilities:  A Bid for the Acquired Assets must provide for the payment or assumption of at least all of the Assumed Liabilities (as defined in the Stalking Horse Purchase Agreement).  For the avoidance of doubt, a Bid may not provide for the assumption of any or all of the DIP Loan Obligations or the Prepetition Secured Obligations, which obligations must be paid in cash as provided above unless otherwise agreed to by the DIP Lender or the Prepetition Secured Lender (as defined in the Bidding Procedures Order), respectively, in each case in such party's sole and absolute discretion.

g.    Corporate Authority:   A Bid for the Acquired Assets must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Alternative Transaction; provided, however, that, if the Bidder is an entity specially formed for the purpose of effectuating the Alternative Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Alternative Transaction by the equity holder(s) of such Bidder.

h.    Proof of Financial Ability to Perform:   A Bid for the Acquired Assets must include written evidence that the Debtors, in consultation with their legal and financial advisors, and the Committee, if any, reasonably conclude demonstrates that the Bidder has the necessary financial ability to close the Alternative Transaction and provide adequate assurance of future performance under all contracts and leases to be assumed and assigned in such Alternative Transaction. By submitting a Bid, each Bidder agrees and acknowledges that any and all such written evidence may be shared by the Debtors, prior to the Sale Hearing, with the DIP Lender, the Committee, if any, and the landlords and counterparties under the Debtors' unexpired leases and contracts proposed under the Bid to be assumed

---

[3] Counsel for the Stalking Horse Purchaser will, upon written request of counsel for the Debtors prior to the commencement of the Bid Deadline, provide counsel to the Debtors with a reasonable estimate of the amount of the Expense Reimbursement, DIP Loan Obligations and Prepetition Secured Obligations through and including the Auction, which amount shall be used by the Debtors to determine the Minimum Bid.

and assigned to the Bidder.  Such information must include, *inter alia*, the following:

(i)     contact names and numbers for verification of financing sources;

(ii)    evidence of the Bidder's internal resources and proof of unconditional debt or equity funding commitments, from a recognized banking institution in the amount of the cash portion of such Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtor in the amount of the cash portion of such Bid, in each case, as are needed to close the Alternative Transaction;

(iii)   the Bidder's current financial statements (audited if they exist); and

(iv)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor demonstrating that such Bidder has the ability to close the Alternative Transaction.

i.      <u>Contingencies</u>:   Each Bid for the Acquired Assets (i) may not contain representations and warranties, covenants, conditions, or termination rights materially more onerous in the aggregate to the Debtors than those set forth in the Stalking Horse Purchase Agreement and (ii) may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects of specified representations and warranties at the closing of the Alternative Transaction (which representations and warranties shall not be materially more onerous than those set forth in the Stalking Horse Purchase Agreement).

j.      <u>Irrevocable</u>:  Each Bid for the Acquired Assets must be irrevocable through the Auction, <u>provided</u>, <u>however</u>, that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined below), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures.

k.      <u>Bid Deadline</u>:  The following parties must receive a Bid for the Acquired Assets in writing, on or before **March 15, 2016 at 5:00 p.m. (prevailing Eastern Time)** or such later date as may be agreed to by the Debtors (the "<u>Bid Deadline</u>"): (i) the Debtors, NYC Constructors Inc. and MRP L.L.C., c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017, Attn: William H. Henrich; (ii) counsel to the Debtors, Tarter Krinsky & Drogin LLP, 1350 Broadway, New York, New York 10018, Attn: Scott S. Markowitz and Arthur Goldstein; and (iii) counsel to the DIP Lender, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: Scott K. Rutsky and Jared D. Zajac; and (iv) counsel to the Committee, if any.

**Qualified Bids Relating to the Acquired Assets**

A Bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "Qualified Bid" for the Acquired Assets, and such Bidder that meets the above requirements shall constitute a "Qualified Bidder" for purposes of the Auction.  Notwithstanding anything herein to the contrary, the Stalking Horse Purchase Agreement submitted by the Stalking Horse Purchaser shall be deemed a Qualified Bid for the Acquired Assets, and the Stalking Horse Purchaser shall be deemed a Qualified Bidder for the Acquired Assets.

Upon the Debtors' receipt of Bid(s) from a Bidder(s), the Debtors shall, within one business day, provide a summary of such Bid(s) to the DIP Lender and the Committee, if any. Each Qualified Bidder (including the Stalking Horse Purchaser) will receive from counsel to the Debtors a copy of any Qualified Bids, including, without limitation, (a) a true and complete copy of the clean executed Modified Asset Purchase Agreement (together with all Schedules and Exhibits), and (b) a marked version of such agreement (marked to show revisions from the Stalking Horse Purchase Agreement).

The Debtors, in consultation with the Committee, if any, shall make a determination regarding whether a Bid is a Qualified Bid and shall notify Bidders whether their Bids have been determined to be qualified by no later than 5:00 p.m. (prevailing Eastern Time) on March 16, 2016.  The Debtors reserve the right, at any time after the Bid Deadline and prior to the commencement of the Auction, to request parties submitting written offers (whether or not such offers might be determined to be Qualified Bids) to amend their written offers.

The Debtors shall use reasonable efforts to inform counsel to the Stalking Horse Purchaser whether the Debtors will consider such Bids to be Qualified Bids by no later than three (3) days prior to the date first scheduled for the Auction (and in any event will inform the Stalking Horse Purchaser of any ongoing Bid negotiations by or before such time) but in any event no later than one (1) day prior to the Auction.

In the event the DIP Lender and/or the Prepetition Secured Lender (or any affiliated assignees thereof) decides to bid, the DIP Lender and the Prepetition Secured Lender shall each be deemed a Qualified Bidder without any further action or need for further order of the Court, and shall be, pursuant to section 363(k) of the Bankruptcy Code, entitled to credit bid all or a portion of their respective claims against the Debtors as a Qualified Bid, without otherwise complying with the Bidding Procedures, except to the extent stated herein.

**Auction**

If one or more Qualified Bids for the Acquired Assets (other than the Stalking Horse Purchase Agreement submitted by the Stalking Horse Purchaser) are received by the Bid Deadline, the Debtors will conduct an auction (the "Auction") to determine the highest and best Qualified Bid for the Acquired Assets.  This determination shall take into account any factors the Debtors, in consultation with the Committee, if any, reasonably deem relevant to the value of the Qualified Bid to the estates and may include, among other things, the following:  (a) the amount

and nature of the consideration; (b) the number, type and nature of any changes to the Stalking Horse Purchase Agreement requested by each Bidder; (c) the extent to which such modifications are likely to delay closing of the sale of the Acquired Assets and the cost to the Debtors of such modifications or delay; (d) the amount and nature of the consideration to be received by the Debtors; (e) the likelihood of the Bidder's ability to close a transaction and the timing thereof; and (f) the net benefit to the estate, taking into account the Stalking Horse Purchaser's rights to the Break-Up Fee and Expense Reimbursement (collectively, the "Bid Assessment Criteria").  If no Qualified Bid (other than the Stalking Horse Purchase Agreement) is received by the Bid Deadline, (i) the Stalking Horse Purchaser shall be deemed to be the Successful Bidder, and (ii) the Debtors shall cancel the Auction and proceed to seek approval of the Stalking Horse Purchase Agreement at the Sale Hearing.  Only parties that the Debtors, in consultation with the Committee, if any, determine are Qualified Bidders in accordance with these Bidding Procedures may participate in the Auction.

**Auction Rules**

The Auction shall take place on **March 18, 2016 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Tarter Krinsky & Drogin LLP, 1350 Broadway, New York, New York 10018, or such other place and time as the Debtors shall notify all Qualified Bidders, including, without limitation, the Stalking Horse Purchaser, the Committee, if any, the DIP Lender, and other invitees.  The Auction shall be conducted according to the following procedures:

Only the Debtors and their counsel, the Debtors' equity holders and their counsel, the DIP Lender and its counsel, members of the Committee and Committee counsel, if any, the Stalking Horse Purchaser and its counsel, and any other Qualified Bidder, in each case, along with their representatives, shall attend the Auction in person, and only the Stalking Horse Purchaser and such other Qualified Bidders will be entitled to make any Bids at the Auction.

The Debtors and their professionals shall direct and preside over the Auction.  Other than as expressly set forth herein, the Debtors, in consultation with the Committee, if any, may conduct the Auction in the manner they determine will result in the highest, best, and otherwise financially superior offer for the Acquired Assets that are the subject of the Auction.  At the start of the Auction, the Debtors shall describe the terms of the highest and best Qualified Bid or Qualified Bids for the Acquired Assets received prior to the Bid Deadline (the "Auction Baseline Bid").  The Debtors shall advise each Qualified Bidder (including the Stalking Horse Purchaser), in writing, regarding which Qualified Bid shall be the Auction Baseline Bid as soon as reasonably practicable prior to the commencement of the Auction.  Each Qualified Bidder participating in the Auction must confirm on the record (a) at the commencement of the Auction and again at the conclusion of the Auction, that it has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, and (b) at the commencement of the Auction, that it has reviewed and understands and accepts the Bidding Procedures.

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the respective Auction Baseline Bid.  To submit an Overbid for purposes of the Auction, a Bidder must comply with the following conditions:

(a) <u>Minimum Overbid Increments</u>:  Any Overbid for the Acquired Assets after and above the Auction Baseline Bid shall be made in increments valued at not less than $50,000.  Additional consideration in excess of the amount set forth in the Auction Baseline Bid may include cash and/or noncash consideration and, in the case of an Overbid by the Stalking Horse Purchaser, a credit bid of the full amount of the Expense Reimbursement and the Break-Up Fee in connection with each round of bidding in the Auction.

(b) <u>Remaining Terms Are the Same as for Qualified Bids</u>:  Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, <u>provided</u>, <u>however</u>, that the Bid Deadline shall not apply.  Any Overbid must remain open and binding on the Bidder until and unless the Debtors accept a higher Overbid.

In the exercise of the Debtors' business judgment, and in consultation with the Committee, if any, the Debtors may require that, to the extent not previously provided (which shall be determined by the Debtors), a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor) demonstrating such Bidder's ability to close the Alternative Transaction proposed by such Overbid.

(c) <u>Announcement of Overbids</u>:  The Debtors shall announce at the Auction the material terms of each Overbid and the basis for calculating the total consideration offered in each such Overbid.

After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid(s) that they believe to be the highest and otherwise best offer (the "<u>Leading Bid</u>").  A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit an Overbid with full knowledge of the Leading Bid.

**Closing the Auction**

The Auction shall continue until there is only one Qualified Bid for the Acquired Assets that the Debtors determine in their reasonable business judgment, after consultation with the Committee, if any, is the overall highest and best Qualified Bid at the Auction for the Acquired Assets (such Bid a "<u>Successful Bid</u>," and such Bidder submitting such Successful Bid, a "<u>Successful Bidder</u>").  The Successful Bidder shall submit to the Debtors fully executed documentation memorializing the terms of the Successful Bid within one (1) business day after the closing of the Auction.

Unless otherwise required pursuant to the Debtors' fiduciary duties, the Debtors shall not consider any Bids submitted after the conclusion of the Auction.

**Backup Bidder**

Notwithstanding anything in the Bidding Procedures to the contrary, if the Auction is conducted, the party with the next highest or otherwise best Qualified Bid at the Auction, as determined by the Debtors, in the exercise of their business judgment, in consultation with the Committee, if any, will be designated as the potential backup bidder (a "Potential Backup Bidder"). In the event that a Qualified Bidder is identified by the Debtors as a Potential Backup Bidder, such party shall be required to serve as the backup bidder if selected to do so (the "Backup Bidder").

The Backup Bidder shall be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "Backup Bid") open and irrevocable until the earlier of 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the date of the Auction (the "Outside Backup Date") or the closing of the transaction with the Successful Bidder. Following the Sale Hearing, if any Successful Bidder fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Successful Bidder, the Debtors may designate the Backup Bidder to be the new Successful Bidder, in which event the Backup Bidder shall be obligated to consummate the Backup Bid as if it were the Successful Bidder, and the Debtors will be authorized, but not required, to consummate the transaction, with the designated Backup Bidder without further order of the Court. In such case, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder. Notwithstanding anything to the contrary contained in these Bidding Procedures, the Debtors may not compel the Stalking Horse Purchaser to serve as the Backup Bidder without the Stalking Horse Purchaser's express written consent.

**Additional Procedures**

The Debtors, in the exercise of their fiduciary obligations, and in consultation with the Committee, if any, may announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent in any material respect with these Bidding Procedures or the Stalking Horse Purchase Agreement.

**Consent to Jurisdiction as Condition to Bidding**

The Stalking Horse Purchaser and all Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the Stalking Horse Purchase Agreement, any Modified Asset Purchase Agreement, the Auction or the construction and enforcement of any Alternative Transaction documents.

**Bid Protections**

Pursuant to the Bidding Procedures Order, the Stalking Horse Purchaser is entitled to: (a) the Break-Up Fee in the amount of 4% of the Cash Purchase Price and Assumed Liabilities (as such terms are defined in the Stalking Horse Purchase Agreement); and (b) the Expense

Reimbursement in an amount of up to $250,000, in each case, pursuant to the terms of the Stalking Horse Purchase Agreement and the Bidding Procedures Order.

Pursuant to the Bidding Procedures Order, except for the Stalking Horse Purchaser no other party submitting an offer or Bid for the Acquired Assets or a Qualified Bid for the Acquired Assets shall be entitled to any expense reimbursement, break-up fee, termination or similar fee or payment.

**Sale Hearing**

The Debtors have scheduled a hearing (the "Sale Hearing") on **March 24, 2016 at 10:00 a.m. (prevailing Eastern time)**, to seek approval of the transactions contemplated by the Stalking Horse Purchase Agreement and/or any Successful Bid or Successful Bids.  Objections, if any, to the sale of all or any portion of the Acquired Assets to any Successful Bidder, the transactions contemplated by the Stalking Horse Purchase Agreement, and/or the relief requested in the Motion, other than the relief approved in the Bidding Procedures Order, must be in writing and filed with the Court **on or before the date that is seven (7) days before the date of the Sale Hearing** and be served such that they are actually received by (i) counsel to the Debtors, Tarter Krinsky & Drogin LLP, 1350 Broadway, New York, New York 10018, Attn: Scott S. Markowitz and Arthur Goldstein; (ii) counsel to the Stalking Horse Purchaser, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: Scott K. Rutsky and Jared D. Zajac; (iii) counsel to the Committee, if any; and (iv) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014.  The Sale hearing may be adjourned from time to time without further notice to parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or a notice filed with the Bankruptcy Court, as applicable; provided, however, that if the Stalking Horse Purchaser is the Successful Bidder, the Sale Hearing shall not be adjourned (unless extended with the express written consent of the Stalking Horse Purchaser or as adjourned by the Court).

**Return of Good Faith Deposits**

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Court.  The Good Faith Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than three (3) business days after the Sale Hearing.  The Good Faith Deposit of each Backup Bidder, if any, shall be returned to the respective Backup Bidder on the date that is the earlier of 72 hours after (a) the closing of the transaction with the Successful Bidder for the assets bid upon by such Backup Bidder and (b) the Outside Backup Date.  Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If a Successful Bidder timely closes its winning transaction, its Good Faith Deposit shall be credited towards its purchase price.

**Exhibit B to Bidding Procedures Order**

[Notice of Auction and Sale Hearing]

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | )    Chapter 11 |
| | ) |
| NYC Constructors Inc., *et al.*,[1] | )    Case No. 16-10069 (SCC) |
| | ) |
|           Debtors. | )    (Jointly Administered) |
| | ) |

## NOTICE OF (A) SOLICITATION OF BIDS TO PURCHASE SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) AUCTION AND (C) SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.       On January 14, 2016, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Debtors' Motion for Orders Pursuant to Sections 105(a) and 363(b), 363(f), 363(m) and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 (I) Authorizing and Approving Entry Into a Stalking Horse Purchase Agreement and Granting Bid Protections to the Stalking Horse Purchaser, and (II) Approving (A) Bid Procedures and Notice of the Auction Relating Thereto, (B) Sale of Substantially All of the Debtors' Assets (Including the Assumption and Assignment of Executory Contracts) to the Stalking Horse Purchaser or a Party Making a Higher and Better Offer, Free and Clear of Liens, Claims, Interests and Encumbrances, (C) Approving the Asset Purchase Agreement Which May Include a Credit Bid Component, and (D) Granting Related Relief]* [ECF No. 8] (the "Sale Motion") with the United States Bankruptcy Court for the Southern District of New York (the "Court").

2.       On February 5, 2016, the Court entered an order [ECF No. __] (the "Bidding Procedures Order"), among other things, (i) authorizing and approving the bidding procedures (the "Bidding Procedures"); (ii) authorizing the Debtors to entered into that certain asset purchase agreement (the "Stalking Horse Purchase Agreement") for the sale (the "Sale") of substantially all of their assets (the "Acquired Assets") to Banker Steel NY, LLC and Banker Steel NJ, LLC (together, the "Stalking Horse Purchaser"), free and clear of all liens, claims, interests and encumbrances (except for the Assumed Liabilities, as defined in the Stalking Horse Purchase Agreement), as more fully set forth in the Sale Motion and providing bid protections; (iii) approving the notice procedures, establishing the dates, times, and locations of the deadline to submit bids for the Acquired Assets, the auction of the Acquired Assets (the "Auction"), and the hearing to approve of the sale of the Acquired Assets; and (iv) granting related relief.

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number are NYC Constructors Inc. (7618) and MRP, L.L.C. (0498).

3.     All interested parties are invited to submit a bid (a "Bid") and to make offers to purchase the Acquired Assets in accordance with the terms of the Bidding Procedures and the Bidding Procedures Order.  The deadline to submit a Bid is **March 15, 2016 at 5:00 p.m.** (prevailing Eastern Time) (the "Bid Deadline").  The following parties must receive a Bid in writing on or before the Bid Deadline: (i) the Debtors, NYC Constructors Inc. and MRP L.L.C., c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017, Attn: William H. Henrich; (ii) counsel to the Debtors, Tarter Krinsky & Drogin LLP, 1350 Broadway, New York, New York 10018, Attn: Scott S. Markowitz and Arthur Goldstein; (iii) counsel to the lender under the Debtors' postpetition credit facility, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: Scott K. Rutsky and Jared D. Zajac; and (iv) counsel to the Official Committee of Unsecured Creditors appointed in these cases, if any (the "Committee").  A Bid received before the Bid Deadline that meets the requirements of the Bidding Procedures and the Bidding Procedures Order or is otherwise qualified by the Debtors shall constitute a "Qualified Bid" for the Acquired Assets, and such a Bidder shall constitute a "Qualified Bidder".

4.     Pursuant to the Bidding Procedures Order, if the Debtors receive one or more Qualified Bids (other than the Stalking Horse Purchase Agreement) within the requirements and time frame specified by the Bidding Procedures, the Debtors will conduct the Auction on **March 18, 2016** at **10:00 a.m. (prevailing Eastern Time)** at the offices of Tarter Krinsky & Drogin LLP, 1350 Broadway, New York, New York 10018, or such later time or other place as the Debtors shall timely notify all Qualified Bidders and the Notice Parties (as defined in the Bidding Procedures Order).  Only parties that the Debtors, in consultation with its legal and financial advisors and the Committee, if any, determine are Qualified Bidders in accordance with the Bidding Procedures may participate in the Auction.  If no Qualified Bid (other than the Stalking Horse Purchase Agreement) is received by the Bid Deadline, (i) the Stalking Horse Purchaser shall be deemed to be the Successful Bidder (as defined in the Bidding Procedures Order), and (ii) the Debtors shall cancel the Auction and proceed to seek approval of the Stalking Horse Purchase Agreement at the Sale Hearing.

5.     A hearing (the "Sale Hearing") will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom 623, New York, New York 10004 on **March 24, 2016 at 10:00.m. (prevailing Eastern Time)**, or at such other time as the Court permits, to confirm the results of the Auction and approve the Sale of the Acquired Assets to the Stalking Horse Purchaser or the Successful Bidder.  The Debtors may adjourn the Sale Hearing one or more times without further notice by making an announcement in open Court.

6.     Responses or objections, if any, to the relief requested in the Motion must be filed electronically with the Court on the docket of *In re NYC Constructors Inc.*, Case No. 16-10069 and served by U.S. mail, overnight delivery, hand delivery or, with the exception of the Court and the United States Trustee, facsimile upon each of the following: (i) the Chambers of the Honorable Shelley C. Chapman, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom 623, New York, New York 10004; (ii) counsel to the Debtors, Tarter Krinsky & Drogin LLP, 1350 Broadway, New York, New York 10018, Attn: Scott S. Markowitz and Arthur Goldstein (iii) counsel to the Stalking Horse Purchaser, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: Scott K. Rutsky and Jared

D. Zajac; (iv) counsel to the Committee, if any; and (v) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014, so as to be actually received no later than **March 17, 2016 at 5:00 p.m. (prevailing Eastern Time)**.  In addition, supplemental written objections regarding issues arising from and in connection with the Auction and/or the Debtors' selection of the Successful Bid made by the Successful Bidder, other than the Stalking Horse Purchaser, must be actually received by the foregoing parties no later than **5:00 p.m. on March 23, 2016** (i.e. the day before the Sale Hearing date).

7.    Only those objections that are timely filed, served and received will be considered at the Sale Hearing.  Any party failing to timely file and serve an objection to the Sale on or before the applicable objection deadlines in accordance with the Bidding Procedures Order shall be forever barred from asserting any objection to the Sale, including with respect to the transfer of the property free and clear of all liens, claims, interests and encumbrances effected thereunder. The parties are required to attend the Sale Hearing, and failure to attend in person or by counsel may result in relief being granted or denied upon default.

8.    Copies of the Motion, the Bidding Procedures, the Bidding Procedures Order, and the Stalking Horse Purchase Agreement may be downloaded from the Court's docket at http://ecf.nysb.uscourts.gov or provided upon request to Debtors' counsel.

Dated:  February _____, 2016                  /s/ _____

*Counsel for the Debtors and Debtors in Possession*

## Exhibit C to Bidding Procedures Order

[Notice of Assumption and Assignment]

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| NYC Constructors Inc., *et al.*,[1] | ) | Case No. 16-10069 (SCC) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**NOTICE OF (I) POTENTIAL ASSUMPTION, ASSIGNMENT
AND/OR TRANSFER OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES,
(II) FIXING OF CURE AMOUNT, AND (III) DEADLINE TO OBJECT THERETO**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.     On January 14, 2016, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a motion [ECF No. 8] (the "Sale Motion") with the United States Bankruptcy Court for the Southern District of New York (the "Court") seeking approval, among other things, of dates, times and procedures related to the sale (the "Sale") of all or substantially all of the Debtors' assets to Banker Steel NY, LLC and Banker Steel NJ, LLC (together, the "Stalking Horse Purchaser") pursuant to the terms of that certain Asset Purchase Agreement, dated January 14, 2016 (the "Stalking Horse Purchase Agreement").

2.     On February 5, 2016, the Court entered an order (the "Bidding Procedures Order"), which, among other things, authorized the Debtors to conduct the Sale of their assets through the process and procedures set forth therein, including the procedures by which counterparties to Contracts and Leases (as defined in the Bidding Procedures Order) with one or more of the Debtors may object to the Debtors' proposed assumption and/or assignment of such Contracts and Leases in connection with the Sale.

3.     A list of the Debtors' Contracts and Leases that are subject to potential assumption and assignment in connection with the Sale and the cure amounts associated therewith (the "Contract Schedule") is attached to this notice (this Notice of Assumption and Assignment") as **Schedule 1**.  The Debtors believe that any and all defaults (other than the filing of these chapter 11 cases) and actual pecuniary losses under the Contracts and Leases can be cured by the payment of the cure amounts (the "Cure Amounts") listed on **Schedule 1** annexed hereto.

4.     Any objections to (i) the assumption and assignment of a Contract or Lease, including, without limitation, any objections relating to the adequate assurance of future performance by the Stalking Horse Purchaser, or (ii) the amount asserted as the Cure Amount

---

[1]     The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number are NYC Constructors Inc. (7618) and MRP, L.L.C. (0498).

(each, a "Cure Amount/Assignment Objection"), must be in writing and set forth with specificity the nature of the objection and the cure amount that the objecting party believes should be paid in connection with the assumption of the Contract or Lease (the "Claimed Cure Amount"). In addition, if the Debtors identify additional executory contracts or unexpired leases that might be assumed by the Debtors and assigned to the Successful Bidder or Backup Bidder (as such terms are defined in the Bidding Procedures Order) not set forth in this Notice of Assumption and Assignment, the Debtors shall promptly send a supplemental notice (a "Supplemental Notice of Assumption and Assignment") to the applicable counterparties to such additional executory contracts and unexpired leases.

5.    To be considered a timely Cure Amount/Assignment Objection, the Cure Amount/Assignment Objection must be filed with the United States Bankruptcy Court for the Southern District of New York (the "Court") and served upon (i) the Chambers of the HonorableShelley C. Chapman, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom 623, New York, New York 10004; (ii) counsel to the Debtors, Tarter Krinsky & Drogin LLP, 1350 Broadway, New York, New York 10018, Attn: Scott S. Markowitz and Arthur Goldstein; (iii) counsel to the Stalking Horse Purchaser, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: Scott K. Rutsky and Jared D. Zajac; (iv) counsel to the Official Committee of Unsecured Creditors, if any; and (v) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014 (collectively, the "Notice Parties"), by the later of (i) 5:00 p.m. (prevailing Eastern Time) on the date that is seven (7) days prior to the Sale Hearing (as defined below); or (ii) 5:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) days after service of the relevant Supplemental Notice of Assumption and Assignment (such later date, the "Cure/Assignment Objection Deadline").

6.    If a Cure Amount/Assignment Objection is timely filed, the Debtors may, in consultation with the Stalking Horse Purchaser, resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting counterparty to any Contract or Lease without further order of the Court. In the event that the Debtors and any objecting party are unable to consensually resolve any Cure Amount/Assignment Objection, a hearing with respect to that objection shall be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom 623, New York, New York 10004 on March 24, 2016 at 10:00 a.m. (prevailing Eastern Time) (the "Sale Hearing"), or at such later date and time as the Debtors may schedule with the Court.

7.    Unless the Cure Amount/Assignment Objection is timely filed and served, the assumption, assignment and/or transfer of the applicable Contract or Lease may proceed without further notice at the Sale Hearing.

8.    If no Cure Amount/Assignment Objection is received by the Cure/Assignment Objection Deadline to a Contract or Lease, then the assumption and assignment of such Contract or Lease may be authorized pursuant to section 365 of the Bankruptcy Code and the applicable Cure Amount, if any, shall be binding upon the non-debtor counterparty to such Contract or Lease for all purposes and shall constitute a final determination of the Cure Amount required to

be paid to such Contract or Lease counterparty in connection with the assignment of such Contract or Lease to the applicable Successful Bidder.  The non-debtor counterparty to such Contract or Lease shall be (i) deemed to have waived its right to object to, contest, condition, or otherwise restrict the assumption and/or assignment of such Contract or Lease, and (ii) forever barred from objecting to the assumption and/or assignment of such Contract or Lease or the Cure Amount (including, without limitation, from asserting any additional cure or other amounts with respect to the Contract or Lease arising prior to such assumption and assignment).  Each non-debtor party shall retain the right to file supplemental written objections  by 5:00 p.m. (prevailing Eastern Time) on March 23, 2016 to the assumption and assignment of its Contract or Lease based solely on the issue of whether the Successful Bidder (in the event the Successful Bidder is not the Stalking Horse Bidder) or Backup Bidder can provide adequate assurance of future performance.  Furthermore, upon the assumption of such Contract or Lease, the applicable Successful Bidder shall enjoy all of the applicable Debtor's rights and benefits thereunder without the necessity of obtaining any party's written consent to such Debtor's assumption and/or assignment of such rights and benefits.

9.    If no Cure Amounts are due under a Contract or Lease, and the non-debtor party to the Contract or Lease does not otherwise object to the Debtors' assumption, assignment and/or transfer of the Contract or Lease, no further action needs to be taken on the part of that non-debtor party.

10.    Copies of the Bidding Procedures Order and other relevant documents are available upon request to the Debtors' attorneys, Tarter Krinsky & Drogin LLP, at the address set forth above, to the attention of Scott S. Markowitz (smarkowitz@tarterkrinsky.com) and Arthur Goldstein (agoldstein@tarterkrinsky.com).

11.    The Debtors' decision to sell, assign and/or transfer to the Successful Bidder or Backup Bidder the Contracts or Leases is subject to Court approval and the closing of the Sale. Accordingly, absent such closing, any of the Contracts or Leases shall not be deemed to be sold, assigned and/or transferred, and shall in all respects be subject to further administration under the Bankruptcy Code.  The inclusion of any document on the Contract Schedule shall not constitute or be deemed to be a determination or admission that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Dated:  February_____, 2016        /s/ _____

*Counsel for the Debtors and Debtors in Possession*

52248636v4

## SCHEDULE 1

## TO NOTICE OF ASSUMPTION AND ASSIGNMENT

SCHEDULE OF POTENTIALLY ASSUMED AGREEMENTS AND CURE AMOUNTS TO
BE FILED AND SERVED WITH NOTICE OF ASSUMPTION AND ASSIGNMENT