**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| NYC Constructors Inc., *et al.*,[1] | ) | Case No. 16-10069 (SCC) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**ORDER (A) AUTHORIZING AND APPROVING**
**THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS**
**FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS;**
**(B) AUTHORIZING AND APPROVING THE ASSET PURCHASE AGREEMENT; (C)**
**APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES; AND (D) GRANTING RELATED RELIEF**

Upon consideration of the motion [*ECF No. 8*] (the "Motion")[2] of the above-captioned

debtors and debtors in possession (collectively, the "Debtors"), pursuant to sections 105(a), 363

and 365 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6004, 6006

and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule

6004-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules")

for entry of an order (this "Sale Order"): (a) authorizing and approving the sale (the "Sale"), in

accordance with the terms of that certain Asset Purchase Agreement, dated as of January 14,

2016, attached hereto as **Exhibit A** (together with the exhibits and schedules thereto, collectively

(each as may be amended or supplemented from time to time, including the amendment dated

March 24, 2016, filed with the Court at *ECF No. 95*), the "APA") between the Debtors and

Banker Steel NY, LLC and Banker Steel NJ, LLC (together, the "Buyers"), of substantially all of

the Debtors' assets (as defined in the APA, the "Acquired Assets") to the Buyers free and clear

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  NYC Constructors, Inc. (7618) and MRP, L.L.C. (0498).

[2]    Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the APA.

of all claims, liens, encumbrances, or other interests, (b) authorizing and approving the APA; (c) approving the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale; and (d) granting related relief, all as more fully described in the Motion; and the Court having entered on February 5, 2016 [*ECF No. 40*] its *Order Granting Motion (A) Authorizing Debtors' Entry Into Stalking Horse Purchase Agreement, (B) Authorizing and Approving Bidding Procedures and Break-Up Fee, (C) Approving Notice Procedures, (D) Setting a Date for the Sale Hearing, and (E) Granting Related Relief* (the "Bidding Procedures Order"), authorizing and approving the bidding procedures, bid protections, notice of the Sale, and scheduling the hearing to consider approval of the Sale; and no competing bids for the Acquired Assets having been received; and the Debtors having filed a notice cancelling the auction on March 15, 2016 [*ECF No. 84*]; and the Debtors having determined that the highest and otherwise best offer for the Acquired Assets was made by the Buyers in the form of the APA; and the Court having conducted a hearing on March 28, 2016 (the "Sale Hearing") to consider (i) the approval of the Sale pursuant to the terms of the APA, and (ii) the related relief requested in the Motion; and upon consideration of the affidavit, dated March 24, 2016, of William Henrich in support of the Motion [*ECF No. 93*] (the "Henrich Affidavit") and the declaration, dated March 24, 2016, of Donald Banker in support of adequate assurance of future performance of the Buyers [*ECF No. 94*] (the "Banker Declaration"); and Endurance American Insurance Company having filed an objection to the Motion [*ECF No. 85*] (the "Endurance Objection") that has been resolved by a separate consent order; and all parties-in-interest having been heard, or having had the opportunity to be heard, regarding the approval of the Motion and the transactions contemplated thereby; and the Court having reviewed and considered the Motion and any objections thereto, and the arguments of counsel and evidence adduced related thereto;

2

and upon the record of the Sale Hearing and the full record of this case; and it appearing that the

relief requested in the Motion is in the best interests of the Debtors, their creditors and estates

and other parties-in-interest; and after due deliberation thereon; and good and sufficient cause

appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      The findings and conclusions set forth herein constitute the Court's

findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to

this proceeding pursuant to Bankruptcy Rule 9014.

B.      To the extent that any of the findings of fact set forth herein constitute

conclusions of law, they are adopted as such.

C.      This Court has jurisdiction over (i) the Motion; (ii) the property of the

Debtors, including the Acquired Assets to be sold, transferred and conveyed pursuant to the

APA; and (iii) the transactions contemplated by the APA, pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue in this District

is proper under 28 U.S.C. §§ 1408 and 1409.

D.      The statutory bases for the relief requested in the Motion are sections

105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and

Local Rule 6004-1.

E.      On January 14, 2016 (the "Petition Date"), each of the Debtors filed

voluntary petitions under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the

Debtors have continued to operate their businesses and manage their properties as debtors in

possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3

F.    The Court previously entered the Bidding Procedures Order which, among other things, (i) established bidding and auction procedures [*ECF No. 40*] (the "Bidding Procedures"); (ii) authorized entry into the APA and approved bid protections in favor of the Buyers in accordance with the APA; (iii) scheduled an auction for the Acquired Assets, if necessary (the "Auction"), and the Sale Hearing; (iv) established procedures for providing notice of and determining any cure amounts related to the Debtors' executory contracts and unexpired leases and the procedures and deadlines for non-debtor parties to such executory contracts and unexpired leases to object to the relief sought in the Motion; (v) approved the form and manner of notice of all procedures, protections, schedules and agreements, and (vi) granted certain related relief.  The Bidding Procedures Orders fixed (i) March 15, 2016 (the "Bid Deadline") as the deadline for submitting competing bids, (ii) March 18, 2016 as the date for the commencement of the Auction (if applicable), and (iii) March 24, 2016, as the date for the Sale Hearing.  The Sale Hearing was subsequently rescheduled for March 28, 2016.  [*See ECF No. 88*].

G.    Actual written notice of, and a reasonable opportunity to object or be heard with respect to, the Sale Hearing, the Auction, the Motion and the Sale has been afforded to all known parties-in-interest, including, but not limited to, the following parties: (i) counsel to the Debtors' postpetition lenders; (ii) all taxing authorities in the States where the Acquired Assets are located, including the Internal Revenue Service, and all other federal, state and local taxing and regulatory authorities known to the Debtors to assert jurisdiction over the Acquired Assets or which are reasonably expected by the Debtors to have claims, contingent or otherwise, in connection with the ownership of the Acquired Assets, or to have any known interest in the relief requested in the Motion; (iii) all parties that have requested or that are required to receive

4

special notice pursuant to Bankruptcy Rule 2002, 6004 or 6006; (iv) all persons or entities known or reasonably believed to have asserted any lien, claim, encumbrance, right of first refusal, or other interest in or upon any of the Acquired Assets; (v) all counterparties to any executory contract or unexpired lease of the Debtors; (vi) each of the Debtors' twenty largest unsecured creditors; (vii) the Office of the United States Trustee for the Southern District of New York; (viii) the Securities and Exchange Commission; (ix) the United States Attorney's office; (x) Attorneys General in the States where the Acquired Assets are located; (xi) the United States Environmental Protection Agency; (xii) any applicable state and local environmental agencies; (xiii) the New Jersey Department of the Treasury, Division of Taxation, Bulk Sale Unit (the "New Jersey Division of Taxation"); (xiv) the Office of the Attorney General for the State of New Jersey, Tax, Bankruptcy & Debt Recovery Section (the "New Jersey Attorney General"); (xv) all parties to any litigation involving the Debtors; (xvi) all other known creditors and interest holders of the Debtors; and (xvii) any party that the Debtors believe may have an interest, or that has previously expressed and interest, in purchasing the Acquired Assets.

H.    The New Jersey Division of Taxation and the New Jersey Attorney General each received notice of the Motion, including the request that this Sale Order provide that no bulk sale filing with, or escrow for, the New Jersey Division of Taxation be required in connection with the Sale of the Acquired Assets, that the Buyers take the conveyance of the Acquired Assets free and clear of any claims or Interests (as defined below) by the New Jersey Division of Taxation for taxes due from or claims against the Debtors or any predecessor entity, whether resulting from or existing prior to the Sale of the Acquired Assets, and that, subsequent to the Sale, the New Jersey Division of Taxation not assert any liens or claims against the Buyers or the Acquired Assets.

5

I.      The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the sales process, including, without limitation, approval and authorization to serve the Notice of Auction and Sale Hearing (as defined in the Bidding Procedures Order).

J.      The Notice of Auction and Sale Hearing provided all interested parties with timely and proper notice of the Sale as contemplated by the APA, the Sale Hearing, the Auction and the deadlines established by the Court for objecting to the Sale and the other relief requested in the Motion.

K.      As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate and sufficient notice of the Motion, the Auction, the Sale and the Sale Hearing has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rule 6004-1.  The Debtors also have complied with all obligations to provide notice of the Motion, the Auction, the Sale and the Sale Hearing required by the Bidding Procedures Order, including with respect to the notice of the assumption, sale and assignment of each Assigned Contract (as defined in the APA).  Notice of the Sale Hearing, the Auction, the Motion and the Sale was also published in: (a) *The New York Times* (national edition) on February 11, 2016 and *Crain's New York Business* on February 15, 2016, and affidavits of publication reflecting same were filed with the Court on March 17, 2016 [*ECF Nos. 86-87*]; and (b) an online advertisement that appeared on the websites of *Constructor Magazine* and the *Engineering News Record*, as described in the Henrich Affidavit. The notices described above were good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale and the Sale Hearing is required.

L.      The disclosures made by the Debtors in the Motion, the Notice of Auction and Sale Hearing and in related documents filed with the Court and/or served on parties-in-interest concerning the APA, the Auction, the Sale and the Sale Hearing were good, complete and adequate.  A reasonable opportunity to object and to be heard with respect to the Motion and the relief requested therein, including, without limitation, the Sale, was given to all interested persons and entities.

M.      The Bidding Procedures set forth in the Bidding Procedures Order were non-collusive, proposed and executed in good faith as a result of arms' length negotiations, and were substantively and procedurally fair to all parties.  The Debtors conducted the sale process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order.  The Sale process and procedures set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Acquired Assets.

N.      The Debtors and their professionals adequately marketed the Acquired Assets to potential purchasers and provided reasonable access for potential bidders to conduct due diligence in accordance with the Bidding Procedures Order, as demonstrated by the Henrich Affidavit and as set forth on the record at the Sale Hearing.  No bids other than the APA were submitted by the Bid Deadline.  In accordance with the Bidding Procedures Order and the Bidding Procedures, the Debtors cancelled the Auction and declared the Buyers' APA as the highest and otherwise best bid for the Acquired Assets.  [*See ECF No. 84*].

O.      On February 10, 2016, in accordance with the Bidding Procedures Order, the Debtors served a notice [*ECF No. 52*] (the "Initial Cure Notice") on the non-debtor counterparties to all executory contracts and unexpired leases of non-residential real property

7

that the Buyers could have included as Assigned Contracts and Pending Contracts (as defined in the APA) in accordance with the APA and the Bidding Procedures Order, notifying such parties of, among other things, (i) the entry of the Bidding Procedures Order, (ii) the potential assumption and assignment to the Buyers of such contracts and leases in connection with the Sale, (iii) the amounts, if any, the Buyers would pay to cure any then-existing defaults under such contracts and leases (the "Cure Amounts"), and (iv) the deadlines established by the Court for objecting to the Cure Amounts and/or the assumption and assignment to the Buyers of such contracts or leases.  On February 19, 2016, in accordance with the Bidding Procedures Order, the Debtors filed with the Court a supplemental notice [*ECF No. 61*] (the "Supplemental Cure Notice" and, together with the Initial Cure Notice, the "Cure Notices") identifying an additional executory contract to be added to the schedule of potentially assumable and assignable executory contracts and unexpired leases, and timely served such notice on the non-debtor counterparties to all executory contracts and unexpired leases identified therein such that all counterparties had a fair and reasonable opportunity to be heard.

P.    A schedule of the Assigned Contracts to be assumed by the Debtors and assigned to the Buyers, including the portion of any Cure Amount to be paid by the Buyers pursuant to Sections 2.04(vii) and 2.06 of the APA, if any, applicable to each such Assigned Contract, is attached hereto as **Exhibit B** (such schedule, as amended, or as may be amended pursuant to the agreement of the parties or pursuant to the APA, the "Assigned Contract Schedule").  A list of Pending Contracts that, pursuant to Section 2.06 of the APA, may be added to the Assigned Contract Schedule is attached hereto as **Exhibit C**.  In accordance with Section 2.06 of the APA, the Buyers have the right to add contracts to the Assigned Contract Schedule as expressly provided in Section 2.06 of the APA.  Following the end of the Designation Period (as

8

defined in the APA), the Debtors shall promptly file with the Court a final schedule of Assigned Contracts showing any revisions from the Assigned Contract Schedule as set forth on **Exhibit B** hereto.

Q.     Good and sufficient notice of the possible transfer, assumption and assignment of the Assigned Contracts and/or the Pending Contracts has been given to all non-debtor parties to the Assigned Contracts and the Pending Contracts, and no other or further notice is required.  A full, fair and reasonable opportunity to object or be heard with respect to any aspect of the assumption and assignment of the Assigned Contracts and the Pending Contracts, including, without limitation, the Cure Amounts, has been afforded to all non-debtor parties to such Assigned Contracts and Pending Contracts and, as applicable, to all other parties-in-interest.

R.     The Assigned Contracts are, and at Closing (or if the Assigned Contracts or the Pending Contracts are to be assumed and assigned to the Buyers on a later date, then as of such later date) shall be deemed to be valid and binding, in full force and effect, and enforceable in accordance with their terms.

S.     The Cure Amounts are deemed to be amounts necessary to "cure" (within the meaning of section 365(b)(1) of the Bankruptcy Code) all "defaults" (within the meaning of section 365(b) of the Bankruptcy Code) under such Assigned Contracts to the extent required by section 365 of the Bankruptcy Code.

T.     The Debtors and the Buyers have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code in connection with the sale and assumption and assignment to the Buyers of the Assigned Contracts in accordance with the APA.  As evidenced by the Banker Declaration and as set forth on the record at the Sale Hearing, the

9

Buyers have demonstrated adequate assurance of future performance with respect to the Assigned Contracts pursuant to section 365(b)(1)(C) of the Bankruptcy Code.

U.      The Assigned Contracts are assignable to the Buyers notwithstanding any provisions contained therein to the contrary.  Failure to object to the assumption and assignment of an Assigned Contract is hereby deemed to constitute irrevocable consent to (i) the Cure Amount set forth on the Assigned Contract Schedule, and (ii) the assumption and assignment to the Buyers in accordance with the APA.

V.      The assumption and assignment of the Assigned Contracts as set forth in the APA is integral to the APA and is in the best interests of the Debtors, their creditors and estates and other parties-in-interest, and represents the exercise of sound and prudent business judgment by the Debtors.

W.      The consideration to be provided by the Buyers pursuant to the APA:  (i) is fair and reasonable; (ii) is the highest and otherwise best offer for the Acquired Assets, and is in the best interests of the Debtors, their creditors and estates; (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and the Uniform Fraudulent Conveyance Act (7A part II, U.L.A. 2 (1999)) or the Uniform Fraudulent Transfer Act (7A, part II, U.L.A. 66 (1999)) or any similar laws of any state or other jurisdiction whose law is applicable to the contemplated transactions; and (iv) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other available alternative.   In reaching this determination, the Court has taken into account both the consideration to be realized directly by the Debtors, including the cash to be paid to the Debtors' estates, the assumption of claims against the Debtors' estate, and the indirect benefits of such Sale for the Debtors' vendors, suppliers, employees, customers and the public served, directly

10

and indirectly, by the Debtors' businesses.  No other entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtors' estates then the Buyers.

X.    The Debtors have demonstrated compelling circumstances, and a good, sufficient, and sound business purpose and justification for the Sale of the Acquired Assets outside of the ordinary course of business.  Such business reasons included, but are not limited to, the following:  (i) the APA constitutes the highest and otherwise best offer for the Acquired Assets; (ii) the APA and the closing thereon will present the best opportunity under the circumstances (including given the Debtors' liquidity circumstances, operational needs and capital structure) to realize and maximize the value of the Acquired Assets on a going concern basis and avoid an immediate devaluation of the Acquired Assets; and (iii) any other transaction would not have yielded as favorable an economic result for the Debtors, their creditors and their estates.

Y.    The Sale outside of a plan of reorganization pursuant to the APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization of the Debtors.  The Sale pursuant to the APA does not constitute a *sub rosa* plan.

Z.    The transactions contemplated by the APA are undertaken by the Debtors and the Buyers at arms' length, without collusion and in good faith within the meaning of section 363(m) of the Bankruptcy Code.  Each Buyer is a good faith purchaser under section 363(m) of the Bankruptcy Code and as such, each is entitled to all of the protections afforded thereby and otherwise has proceeded in good faith in connection with this proceeding in that:  (i) Buyers recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (ii) Buyers complied with all applicable provisions in the Bidding

11

Procedures Order; (iii) Buyers agreed to subject their bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Buyers and other agreements or arrangements entered into by the Buyers in connection with the Sale have been disclosed; and (v) the negotiation and execution of the APA and any other agreements or instruments related thereto was in good faith and an arms' length transaction between the Buyers and the Debtors. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale of the Acquired Assets shall not affect the validity of the Sale of the Acquired Assets to the Buyers.

AA.    The Debtors and the Buyers (including, as applicable, their respective affiliates, partners, principals, shareholders, or representatives) have not engaged in any conduct that would permit the APA or the Sale to be avoided under section 363(n) of the Bankruptcy Code. The Sale may not be avoided under section 363(n) or any other section of the Bankruptcy Code.

BB.    The APA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.

CC.    No Buyer (including, as applicable, any affiliate, partner, principal, shareholder, or representative of any Buyer) is an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

DD.    The Debtors are the sole and lawful owners of the Acquired Assets, and hold all right, title and interest in and to the Acquired Assets immediately prior to the Closing. The consummation of the Sale pursuant to the APA will be a legal, valid and effective sale of the Acquired Assets and will, except as otherwise expressly permitted under the APA, vest the

12

Buyers (and their designees or assignees, as applicable) with all right, title, and interest of the

Debtors and their bankruptcy estates in and to the Acquired Assets (subject to the terms of the

APA) free and clear of all liens, claims, encumbrances, or other interests including, without

limitation, Excluded Liabilities (as defined in the APA), mortgages, restrictions, hypothecations,

charges, indentures, loan agreements, instruments, collective bargaining agreements, leases,

licenses, options, deeds of trust, security interests, other interests, conditional sale or other title

retention agreements, pledges, liens (including as that term is defined in the APA and including,

without limitation, mechanics', materialmens' and other consensual and nonconsensual liens and

statutory liens, rights or interests), judgments, demands, encumbrances, rights of first refusal,

offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution,

indemnity, exoneration, products liability, alter-ego, environmental, or tax, decrees of any court

or foreign or domestic governmental entity, or charges of any kind or nature, if any, including,

but not limited to, any restriction on the use, voting transfer, receipt of income or other exercise

of any attributes of ownership, debts arising in any way in connection with any agreements, acts,

or failures to act, including, but not limited to, any pension liabilities, retiree medical benefit

liabilities, liabilities related to the Employee Retirement Income Security Act ("ERISA"),

liabilities related to the Internal Revenue Code, or any other liability relating to the Debtors'

current and former employees including any withdrawal liability or mass withdrawal liability

under ERISA with respect to any Seller Benefit Plan (as such term is defined in the APA) from

which any complete or partial withdrawal liability is or has been triggered on or prior to Closing

or by the consummation of the Sale, of the Debtors or any of the Debtors' predecessors or

affiliates, claims (as that term is defined in the Bankruptcy Code), whether known or unknown,

recorded or unrecorded, perfected or unperfected, allowed or disallowed, choate or inchoate,

contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under the doctrine of successor liability (the foregoing collectively, other than the Assumed Liabilities expressly set forth in the APA, "Interests").

EE.    A Sale of the Acquired Assets other than free and clear of all Interests would be of substantially less benefit to and would adversely affect the Debtors' bankruptcy estates.

FF.    With respect to all parties asserting Interests in, to, or against the Acquired Assets, the Sale pursuant to the APA complies with one or more of the requirements of section 363(f) of the Bankruptcy Code.  With respect to each Interest in the Acquired Assets:  (i) applicable non-bankruptcy law permits the sale free and clear of such Interest; (ii) the holder of such Interest consents to the Sale; (iii) such Interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the Acquired Assets; (iv) such Interest is in bona fide dispute; or (v) the holder of such Interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

GG.    No objection has been filed or otherwise presented to the Court in respect of the Motion contesting the good faith nature of the Buyers or the receipt of adequate notice of the Motion, the Sale Order, the APA, the Bidding Procedures Order or the Bidding Procedures. All parties with Interests in or against the Acquired Assets, if any, who did not object to the Motion and the relief requested therein, who did not request adequate protection of any possessory right, or who withdrew their objections to the Motion, are deemed to have consented

14

to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  All parties with Interests against the Acquired Assets who objected to the Motion, but who did not withdraw any such objection, can be compelled to accept a monetary satisfaction of their Interests within the meaning of section 363(f)(5) of the Bankruptcy Code, and in each case, are enjoined from taking any action against any of the Buyers, their affiliates or any agent of the foregoing to recover any claim which such person or entity has solely against the Debtors, or any of their respective affiliates or with respect to any of the Acquired Assets.

HH.    The transfer of the Acquired Assets to the Buyers will not subject the Buyers to any liability (including any successor liability) with respect to the operation of the Debtors' businesses prior to the Closing of the Sale or by reason of such transfer (except that the Buyers shall remain liable for the Assumed Liabilities).  The Buyers (i) are not, and shall not be, considered a successor to the Debtors; (ii) have not, *de facto* or otherwise, merged with or into the Debtors; (iii) are not a continuation or substantial continuation of the Debtors or any enterprise of the Debtors; (iv) do not have a common identity of incorporators, directors or equity holders with the Debtors; and (v) are not holding themselves out to the public as a continuation of the Debtors.

II.    By virtue of the APA or otherwise, the Buyers will not acquire any liabilities of the Debtors, other than the Assumed Liabilities and Assigned Contracts as and to the extent set forth in the APA including any caps or other limitations set forth in the APA.

JJ.    Without limiting the generality of the foregoing, other than the Assumed Liabilities, the Buyers would not have entered into the APA and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates and creditors, if the Sale of the Acquired Assets and the assignment of the Assigned Contracts were

15

not free and clear of all Interests of any kind or nature whatsoever, other than the Assumed Liabilities and Assigned Contracts, or if the Buyers would or in the future could be liable for any such Interests.

KK.    The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

LL.    Upon entry of this Sale Order, the Debtors shall have full power and authority to consummate the Sale contemplated by the APA.  The APA and the Sale have been duly and validly authorized by all necessary action of the Debtors and no shareholder vote, board resolution or other corporate action is required of the Debtors for the Debtors to consummate such Sale or the other transactions contemplated in the APA.

MM.    Cause has been shown as to why this Sale Order should not be subject to the stay provided by Bankruptcy Rules 6004 and 6006.

NN.    The entry of this Sale Order is in the best interests of the Debtors, their creditors and estates, and other parties-in-interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Motion, the APA, and the transactions contemplated thereby shall be, and hereby are, granted, authorized, and approved.

2.    Notice of the Motion, the Auction, the Sale Hearing and the Sale was fair and equitable under the circumstances and complied in all respects with sections 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rule 6004-1.

3.    The Endurance Objection has been resolved by a separate consent order. Any and all other objections and responses to the Motion that have not been withdrawn, waived,

16

settled, or resolved, and all reservations of rights included therein, are hereby overruled and denied.

## Approval of the Sale of the Acquired Assets

4.      The Buyers' offer for the Acquired Assets, as embodied in the APA, is the highest and otherwise best offer for such Acquired Assets, and is hereby approved.

5.      Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Sale of the Acquired Assets by the Debtors to the Buyers and the transactions related thereto, upon the Closing under the APA, is authorized and approved in all respects.

6.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized and directed to (a) close, consummate and comply with the APA and all other agreements and documents related to and contemplated thereby (collectively, with the APA, the "Sale Documents"), which Sale Documents hereby are authorized and approved in all respects; (b) execute such other documents and take such other actions as are necessary or appropriate to effectuate the APA; and (c) transfer and assign all right, title and interest (including common law rights) to all property, licenses and rights to be conveyed in accordance with the terms and conditions of the APA.

## Sale and Transfer of the Acquired Assets

7.      Upon the Closing, the Sale of the Acquired Assets by the Debtors to the Buyers shall constitute a legal, valid, and effective transfer of the Acquired Assets pursuant to sections 363 and 365(a) of the Bankruptcy Code, and shall vest the Buyers with all right, title and interest of the Debtors in and to the Acquired Assets free and clear of all Interests pursuant to sections 363(b) and (f) of the Bankruptcy Code, effective as of the Closing under the APA.

17

8.      Pursuant to section 363(f) of the Bankruptcy Code, and upon the Closing

of the Sale, the Sale of the Acquired Assets shall be free and clear of all Interests and all

liabilities of the Debtors whether known or unknown, including, but not limited to, all Interests

and all liabilities asserted by any of the Debtors' creditors, vendors, suppliers, employees,

executory contract and unexpired lease counterparties.  Except as expressly set forth in the APA

with respect to Assumed Liabilities, the Buyers shall not be liable in any way for any Interests

that any of the foregoing parties or any other third party may have against the Debtors.  Any and

all valid and enforceable Interests on, against or in the Acquired Assets, shall be transferred,

affixed, and attached to the net proceeds of the Sale with the same validity, priority, force and

effect such Interests had on the Acquired Assets immediately prior to the Sale and subject to the

rights, claims, defenses, and objections, if any, of the Debtors and all interested parties with

respect to any such asserted Interests.

9.      Upon Closing, this Sale Order shall be construed and shall constitute for

any and all purposes a full and complete general assignment, conveyance and transfer of (a) all

of the Acquired Assets or a bill of sale transferring good and marketable title in such Acquired

Assets to Buyers pursuant to the terms and allocations set forth in the APA and this Sale Order,

and (b) all right, title and interest of the Debtors and their estates to the Buyers in the Assigned

Contracts.

10.     Subject to the terms and conditions of this Sale Order, the transfer of the

Acquired Assets to the Buyers pursuant to the APA and the consummation of the Sale and any

related actions contemplated thereby does not require any consents other than as may be

specifically provided for in the APA and constitutes a legal, valid and effective transfer of the

Acquired Assets, and shall vest the Buyers with all right, title and interest of the Debtors in and

18

to the Acquired Assets as set forth in the APA, as applicable, free and clear of all Interest of any kind or nature whatsoever (except as otherwise expressly assumed in the APA).

11.     To the greatest extent available under applicable law, the Buyers shall be authorized, as of the Closing, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Acquired Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, authorized to be transferred to the Buyers as of the Closing.  Pursuant to section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred or conveyed to the Buyers on account of the filing or pendency of the Debtors' chapter 11 cases or the consummation of the transactions contemplated by the APA.

12.     The Buyers have not assumed or otherwise become obligated for any of the Debtors' liabilities other than as expressly set forth in the APA, and the Buyers have not purchased any of the "Excluded Assets," as defined in the APA.

13.     If any person or entity that has filed any financing statement, mortgage, mechanic's lien, *lis pendens* or other document or instrument evidencing liens with respect to any of the Acquired Assets shall have failed, after due demand, to deliver to the Debtors and the Buyers prior to the Closing, in proper form for filing and executed by the appropriate entity or entities, termination statements, instruments of satisfaction and releases of all Interests which such person or entity has with respect to the Acquired Assets, then (a) the Debtors are authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity and (b) the Buyers are authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute

19

conclusive evidence of the release of all Interests in the Acquired Assets as of the Closing of the APA.

14.     This Sale Order:  (a) is and shall be effective as a determination that, upon Closing, liens and other Interests existing as to the Acquired Assets conveyed to the Buyers have been and hereby are adjudged and declared to be unconditionally released, discharged and terminated; and (b) is and shall be binding upon and govern the acts of all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets conveyed to the Buyers.

15.     The provisions of this Sale Order authorizing the sale of the Acquired Assets free and clear of Interests, other than Assumed Liabilities, shall be self-executing, and neither the Debtors nor the Buyers shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.  However, the Debtors and the Buyers, and each of their respective officers, employees, and agents, are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Buyers deem necessary or appropriate to implement and effectuate the terms of the APA and this Sale Order.

16.     With respect to the transactions consummated pursuant to this Sale Order, this Sale Order shall be sole and sufficient evidence of the transfer of title to the Buyers, and the

2414/25185-002 current/55239654v4

Sale consummated pursuant to this Sale Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Sale Order, including without limitation, all foreign affiliates and foreign receivers, filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Sale Order as sole and sufficient evidence of such transfer of title and shall rely upon this Sale Order in consummating the transactions contemplated hereby.

17.    After the date of the Closing of the APA, no person or entity, including, without limitation, any federal, state or local taxing authority, may:  (a) attach or perfect liens or a security interest against any of the Acquired Assets on account of; or (b) collect or attempt to collect from the Buyers or any of their affiliates, any tax (or other amount alleged to be owing by the Debtors) (i) for any period commencing before and concluding prior to the date of Closing or (ii) assessed prior to and payable after the date of Closing.

18.    The Debtors and any and all other persons or entities that are presently, or on the Closing may be, in possession of some or all of the Acquired Assets to be sold, transferred or conveyed pursuant to the APA are hereby directed to surrender possession of the Acquired Assets to the Buyers on the Closing Date.  All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to the Buyers in accordance with the terms of the APA and this Sale Order.

**Contracts to be Assumed and Assigned**

19.      Pursuant to section 365 of the Bankruptcy Code, the Debtors are authorized to assume and assign the Assigned Contracts to the Buyers.   Notwithstanding anything herein to the contrary, the assumption and assignment of the Assigned Contracts shall be complete upon Closing, subject only to the obligation to pay the applicable Cure Amounts as set forth below.

20.      The Cure Amounts, to which no objections have been filed, are hereby fixed for all purposes at the amounts set forth in the Cure Notices served by the Debtors, or as otherwise agreed in writing, and with the consent of the Buyers, between the Debtors and the non-debtor third parties to such Assigned Contracts.   The non-debtor parties to such Assigned Contracts are forever bound by such Cure Amounts, and upon payment of such Cure Amounts, are hereby enjoined from taking any action against the Buyers and the Acquired Assets with respect to any claim for cure under any Assigned Contract.

21.      The Debtors are hereby authorized and directed, in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code, to (a) assume and assign to the Buyers, effective upon the date of the Closing of the sale of the Acquired Assets, the Assigned Contracts free and clear of all Interests of any kind or nature whatsoever (except as otherwise expressly assumed in the APA) and (b) execute and deliver to the Buyers such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Buyers.

22.      The Assigned Contracts, upon assignment to the Buyers, shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Sale Order and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability thereunder.

23.     The failure of the Debtors or the Buyers to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' or the Buyers' right to enforce every term and condition of the Assigned Contracts.

24.     Subject to the Closing and in accordance with Sections 2.04(vii) and 2.06 of the APA, (a) the Buyers are responsible to pay only that portion of the Cure Amounts, if any, specified on the Assigned Contract Schedule (attached as **Exhibit B** to this Sale Order), and (b) the Debtors are required to pay, out of the proceeds from the Sale, any remaining portion of the Cure Amounts in excess of the amounts set forth on the Assigned Contract Schedule.  The payment of the applicable Cure Amount, if any, by the Buyers or the Debtors, as applicable, in accordance with the terms of the APA and this Sale Order shall (x) effect a cure of all defaults existing thereunder as of the date such Assigned Contracts are assumed and (y) compensate for any actual pecuniary loss to such non-debtor party resulting from such default.  Upon the Closing, the Assigned Contracts shall have been assumed by the Debtors and assigned to the Buyers and, pursuant to section 365(f) of the Bankruptcy Code, such assignment by the Debtors of such Assigned Contracts shall not be a default under such contracts.  After the payment of the relevant Cure Amounts, neither the Debtors nor the Buyers shall have any future liabilities to the counterparties to the Assigned Contracts, other than the Buyers' obligations under the Assigned Contracts that first accrue and become due and payable on or after the date that such Assigned Contracts are assumed and assigned.

25.     The Buyers have demonstrated adequate assurance of future performance with respect to the Assigned Contracts.  The proposed assumption and assignment of the

23

Assigned Contracts satisfies the requirements of the Bankruptcy Code including, among other things, sections 365(b)(1) and (3) and 365(f) of the Bankruptcy Code to the extent applicable.

26.    All parties to the Assigned Contracts are forever barred from raising or asserting against the Buyers or the Debtors any assignment fee, default or breach under, or any claim or pecuniary loss or condition to assignment, arising under or related to, the Assigned Contracts existing as of the Closing of the transactions under the APA or arising by reason of such Closing.

27.    Any provision in any Assigned Contract that purports to declare a breach, default, or payment right as a result of an assignment or a change of control in respect of the Debtors, including, but not limited to, any provisions that allows the counterparty to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon assignment of such Assigned Contract, is unenforceable and is hereby nullified solely with respect to the Sale and assignments authorized by this Sale Order, and all Assigned Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Amounts, if any.  No sections or provisions of any Assigned Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Assigned Contracts shall have any force and effect with respect to the sale and assignments authorized by this Sale Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365 of the Bankruptcy Code. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyers of the Assigned Contracts have been satisfied.

28.     Any party having the right to consent to the assumption and assignment of Assigned Contracts that failed to object to such assumption and assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code.  The Buyers shall enjoy all of the rights and benefits under each such Assigned Contract as of the applicable date of assumption and assignment without the necessity of obtaining such non-debtors party's written consent to the assumption or assignment thereof.

29.     Upon assignment, the Buyers and their respective successors and assigns shall have the express right to exercise any and all unexercised extension options, renewal options, and/or non-disturbance rights or protections, notwithstanding any language in the Assigned Contracts making the exercise of such rights personal to any party or limiting the exercise of such rights only to an assignee who is an affiliate of the original named party under such Assigned Contract or any other similar provision.   Upon assignment, the Buyers shall exercise said rights consistent with the terms of any such Assigned Contract.

30.     Pursuant to section 365(a) of the Bankruptcy Code and Section 2.06 of the APA, in the event that the Debtors identify or become aware of any executory contract or unexpired lease that exists between the Debtors and any person or entity that (a) has not expired or terminated pursuant to its own terms, (b) has not previously been assumed, assumed and assigned, or rejected pursuant to an order of the Court on or prior to the Closing, or (c) is not the subject of a pending motion to assume, assume and assign, or reject as of the Closing, the Debtors promptly shall provide the Buyers with written notice of such executory contract or unexpired lease and the Buyers shall have five (5) days from receipt of the notice within which to provide the Debtors with written notice of their intent to take an assignment of the executory contract or unexpired lease.  In the event that the Buyers do not timely provide such notice, the

25

Debtors may reject the subject executory contract or unexpired lease.  The Debtors and the Buyers reserve all of their respective rights with respect to claims that may be asserted by any such executory contract or unexpired lease counterparties.

31.    With respect to any executory contract or unexpired lease identified pursuant to paragraph 30 of this Sale Order, the Buyers shall have the right to designate such an executory contract or unexpired lease as an Assigned Contract.  Upon notice of such designation, the Debtors shall promptly seek Court approval of assumption and assignment of such executory contract or unexpired lease, upon notice to the counterparty to the executory contract or unexpired lease.  In the event that the counterparty has consented in writing to the assumption and assignment, the motion for approval thereof may be heard by the Court on five days' notice; absent such consent, the motion may be heard on ten days' notice.

32.    With respect to any Pending Contract that the Buyers decide, in their sole discretion, to designate as an Assigned Contract prior to the expiration of the Designation Period, the Buyers shall deliver a notice (a "Supplemental Assigned Contract Notice") to the counterparty(ies) to any such Pending Contract, and such Pending Contract shall become an Assigned Contract subject to the terms and provisions of this Sale Order, effective automatically on the fifth (5th) day following service of such Supplemental Assigned Contract Notice.  In accordance with Section 2.06(b) of the APA, any Cure Amounts owed in connection with the assumption and assignment of any Pending Contracts are to be paid by the Debtors, and shall not under any circumstances become the responsibility of the Buyers.

33.    Schedule 2.02(x) to the APA is hereby deemed amended to include the *NYC Constructors Retirement Savings Plan* (the "401(k) Plan") as an Assumed Benefit Plan (as such term is defined in the APA), and Schedule A to the APA is hereby deemed amended to

26

include the 401(k) Plan as an Assigned Contract.  Pursuant to the Initial Cure Notice that was served in accordance to the Bidding Procedures Order, no Cure Amount is owed in connection with the assumption by the Debtors and assignment to the Buyers of the 401(k) Plan.

**Additional Provisions**

34.    The Buyers' liability with respect to the Assumed Liabilities and Assigned Contracts is subject to, and limited by, any and all caps and limits with respect to any Assumed Liabilities and Assigned Contracts set forth in the APA.

35.    Except for the Assumed Liabilities and the Assigned Contracts, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all persons and entities, including, without limitation, the Debtors, the Debtors' affiliates, holders of debt securities issued by the Debtors, equity security holders of the Debtors, the Debtors' employees or former employees, governmental, tax, and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding any Interests in or with respect to the Debtors or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Acquired Assets, the operation of the Debtors' business prior to the date of the Closing under the APA or the transfer of the Acquired Assets to the Buyers (including any claim for any tax arising under a bulk sales or similar act prior to the Closing), shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Interests against the Buyers or any of their affiliates, successors or assigns thereof and each of their respective current and former members, officers, directors, attorneys, employees, partners, affiliates and representatives (each of the foregoing in

27

its individual capacity), or the Acquired Assets, including claims under section 365(n) of the Bankruptcy Code against the Buyers with respect to the Acquired Assets.

36.    Pursuant to section 105(a) and 363(b) of the Bankruptcy Code, all "persons" (as that term is defined in section 101(41) of the Bankruptcy Code) are hereby enjoined from taking any action against the Buyers or their affiliates, partners, principals, shareholders, or representatives (as they existed immediately prior to the Closing of the transactions under the APA) to recover any claim which such "person" has against the Debtors or the Debtors' affiliates (as they exist immediately following such Closing), except and solely to the extent of any Assumed Liabilities expressly assumed by the Buyers pursuant to the APA.

37.    Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, upon the consummation of the Sale of the Acquired Assets to the Buyers: (a) the Acquired Assets shall be transferred to the Buyers without the requirement of: (i) other or further notice in addition to the Motion; (ii) any C-9600 or other filing with the New Jersey Division of Taxation; or (iii) the requirement or creation of any bulk sale tax escrow for the benefit of New Jersey Division of Taxation; (b) the Buyers receive the conveyance of the Acquired Assets free and clear of any claims or Interests held by the New Jersey Division of Taxation for taxes due from or claims against the Debtors or any predecessor entities, whether resulting from or existing prior to the Sale of the Acquired Assets; and (c) subsequent to the Sale, the New Jersey Division of Taxation shall not assert any liens or claims against the Buyers or the Acquired Assets relating to or arising from taxes due from or claims against the Debtors or any predecessor entity, whether resulting from or existing prior to the Sale of the Acquired Assets.

38.    The transactions contemplated by the APA shall be exempt from any so-called "bulk-sale" law in all necessary jurisdictions arising as a result of or in connection with

28

the Debtors' Sale and transfer of the Acquired Assets to the Buyers.  There are no brokers involved in consummating the Sale and no brokers' commissions are due in connection therewith.

39.     The Sale contemplated by the APA is undertaken by the Buyers without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code. Each Buyer is a good faith purchaser entitled to the full benefits and protections afforded by section 363(m) of the Bankruptcy Code (including with respect to the transfer of the Assigned Contracts assigned as part of the Sale of the Acquired Assets pursuant to section 365 of the Bankruptcy Code and this Sale Order), and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale of the Acquired Assets shall not affect the validity of the Sale of the Acquired Assets to the Buyers (including with respect to the transfer of the Assigned Contracts assigned as part of the Sale of the Acquired Assets pursuant to section 365 of the Bankruptcy Code and this Sale Order, and the sale free and clear of Interests (unless otherwise expressly assumed in the APA)), unless such authorization and consummation of such Sale are duly stayed pending such appeal.

40.     The transactions contemplated under the APA do not amount to a consolidation, merger, or *de facto* merger of the Buyers and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Buyers and the Debtors, there is no continuity of enterprise between the Debtors and the Buyers, the Buyers are not a mere continuation of the Debtors or their estates, and the Buyers do not constitute a successor to the Debtors or their estates.

41.     Other than the Assumed Liabilities under the APA, the Buyers shall not assume, nor be deemed to assume or in any way be responsible for any liability or obligation of

29

any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor or transferee liability, withdrawal liability or mass withdrawal liability under ERISA with respect to any Seller Benefit Plan from which any complete or partial withdrawal liability is or has been triggered on or prior to Closing or by the consummation of the Sale, liability or responsibility for any claim against the Debtors or against any insider of the Debtors or similar liability. The Motion and notice thereof contains sufficient notice of such limitation in accordance with the Bankruptcy Rules.

42.    The consideration provided by the Buyers for the Acquired Assets under the APA is fair and reasonable, and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

43.    In accordance with the final order approving the Debtors' postpetition secured financing [*ECF No. 39*] (the "Final DIP Order"), and in full and final satisfaction and release of the DIP Lender's (as defined in the Final DIP Order) carve-out obligations under paragraph 8 of the Final DIP Order, at Closing, the DIP Lender will fund the following amounts into a segregated escrow account maintained by Debtors' counsel (the "Carve-Out Escrow Agent"): (a) $406,679.36 (the "Pre-Closing Carve-Out Escrow"), comprised of (i) $371,679.36 (the "Professional Fee Allocation") for accrued but as yet unpaid fees and expense reimbursements for professionals employed by the Debtors, pursuant to sections 327 or 328 of the Bankruptcy Code (the "Case Professionals"), that were included in the Approved Budget (as such term is defined in the Final DIP Order) for the period from the Petition Date to the Closing Date (the "Pre-Closing Period"), and (ii) $35,000 (the "UST Allocation") for quarterly fees to be paid to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) (the "UST Fees") for the

30

Pre-Closing Period; and (b) $125,000 (representing the post-Triggering Event carve-out pursuant to paragraph 8(a)(iv) of the Final DIP Order and hereinafter, the "Post-Closing Carve-Out Escrow"). To the extent that fee and expense reimbursement requests of Case Professionals are approved and allowed pursuant to an order of this Court (any such fees and expense reimbursements, "Allowed Fees"), such Allowed Fees shall be paid to the applicable Case Processional: (x) with respect to Allowed Fees incurred during the Pre-Closing Period, from the Professional Fee Allocation of the Pre-Closing Carve-Out Escrow; and (y) with respect to Allowed Fees incurred during the period following the Closing Date (the "Post-Closing Period"), from the Post-Closing Carve-Out Escrow. The Debtors shall pay UST Fees for the Pre-Closing Period from the UST Allocation of the Pre-Closing Carve-Out Escrow, and any Post-Closing UST Fees shall be paid from the proceeds of the Sale. For the avoidance of doubt, the Pre-Closing Carve-Out Escrow cannot be used to pay any Allowed Fees or UST Fees for the Post-Closing Period, and the Post-Closing Carve-Out Escrow cannot be used to pay any Allowed Fees or UST Fees for the Pre-Closing Period, and such escrowed funds shall not be available to pay any claim or liability of any creditor or party-in-interest, nor shall such funds be used for any purpose other than payment of the Allowed Fees as provided herein. Notwithstanding the foregoing, to the extent that any funds remain in the respective Pre-Closing Carve-Out Escrow or the Post-Closing Carve-Out Escrow after all Allowed Fees and UST Fees, as applicable, for such respective periods have been paid (or disallowed by the Court), the Carve-Out Escrow Agent is hereby authorized and directed to refund such amounts to the DIP Lender promptly (and in any event within 5 business days after the date such excess funds become available). The Carve-Out Escrow Agent shall maintain an accounting of all disbursements made from the respective Pre-

31

Closing Carve-Out Escrow and Post-Closing Carve Out Escrow and shall provide such information to the DIP Lender as may be requested by the DIP Lender from time to time.

44.     This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of the APA, the Bidding Procedures Orders and this Sale Order and further to hear and determine any and all disputes between the Debtors and/or the Buyers and any non-debtor party to, among other things, any Assigned Contracts; provided, however, that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the APA, the Bidding Procedures Orders, and this Sale Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon, and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

45.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, in accordance with the terms thereof, and filed with the Court.

46.     From and after the date hereof, the Debtors shall act in accordance with the terms of the APA and each Debtor, to the extent it already has not done so, shall execute any Sale Document at or prior to Closing.

47.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

48.     To the extent of any inconsistency between the provisions of this Sale Order and the APA, or any documents executed in connection therewith, the provisions contained in this Sale Order shall govern.

2414/25185-002 current/55239654v4

49.     The provisions of this Sale Order are nonseverable and mutually dependent.

50.     This Sale Order shall inure to the benefit of the Buyers, the Debtors, and their respective successors and assigns, including but not limited to any chapter 11 or chapter 7 trustee that may be appointed in the Debtors' cases and shall be binding upon any trustee, party, entity or fiduciary that may be appointed in connection with these cases or any other or further case involving the Debtors, whether under chapter 7 or chapter 11 of the Bankruptcy Code.

51.     Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in these chapter 11 cases, or in any subsequent or converted case of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the APA or the terms of this Sale Order. The provisions of this Sale Order and any actions taken pursuant hereto shall survive the entry of any order which may be entered confirming any chapter 11 plan of the Debtors, converting the Debtors' cases from chapter 11 to cases under chapter 7 of the Bankruptcy Code, or dismissing the Debtors' chapter 11 cases.

52.     Because time is of the essence, this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the stay of (i) orders authorizing the sale, use, or lease of property of the estate, as set forth in Bankruptcy Rule 6004(h), (ii) orders authorizing the assignment of an executory contract or unexpired lease, as set forth in Bankruptcy Rule 6006(d), and (iii) proceedings to enforce a judgment, as set forth in Bankruptcy Rule 7062, or otherwise shall not apply to this Sale Order.

53.     The Debtors are authorized to close the Sale under the APA immediately upon entry of this Sale Order.

33

54.    The failure specifically to include or reference any particular provisions of

the APA or the other Sale Documents shall not diminish or impair the efficacy of such provision,

document, agreement or instrument, it being the intent of this Court that the APA and each other

Sale Document be authorized and approved in its entirety.


Dated:  March 28, 2016
        New York, New York                    _____/s/ SHELLEY C. CHAPMAN_____
                                              HONORABLE SHELLEY C. CHAPMAN
                                              UNITED STATES BANKRUPTCY JUDGE

2414/25185-002 current/55239654v4